**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Monroe Charles SCHIFFMAN,
Defendant-Appellant.**

No. 77–5309.

United States Court of Appeals,
Fifth Circuit.

May 15, 1978.

Alan S. Ross, Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Stephen M. Pave, A. Scott Miller, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before JONES, RONEY and TJOFLAT, Circuit Judges.

RONEY, Circuit Judge:

Defendant Monroe Charles Schiffman, a pharmacist, seeks reversal of his federal drug conviction on the sole ground that evidence seized from his drugstore under an administrative search warrant should have been suppressed. The main thrust of defendant's argument centers on whether information supplied to federal agents by an agent of the Florida Board of Pharmacy, which information is statutorily prohibited from use in a Florida criminal prosecution, may be used to furnish the probable cause necessary to support a federal search warrant. We do not reach this question. With the challenged information excised from the warrant application, enough facts were furnished the magistrate to support the administrative search warrant under the lesser standard of statutory probable cause required for such searches, a constitutionally permissible standard under *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972). We therefore affirm the conviction.

Defendant Schiffman was convicted in a nonjury trial for conspiracy to possess and distribute controlled drugs and distribution of controlled drugs, and for furnishing false information in records required by law to be kept. 21 U.S.C.A. §§ 841(a)(1), 843(a)(4).

The events leading to defendant's conviction began on April 7, 1976, when officers of the Hialeah, Florida, Police Department arrested Michael Borka for the sale of certain controlled drugs (Seconal and Dexodrine). The drugs were still in the manufacturer's original 1000-count bottles, which contained the manufacturer's lot numbers. The police found manufacturer's bottles for other drugs (Tuinal) in Borka's apartment. The police department contacted the Federal Drug Enforcement Administration Compliance Section. Borka told the police and

DEA Agent Corbitt that the ultimate source of his drugs was a man who owned a pharmacy and planned to buy another.

DEA Agent Corbitt then began an investigation of Borka's pharmaceutical bottles. From the lot number, he traced two Tuinal bottles to the manufacturer, Lilly, Inc. From Lilly, Corbitt learned the names of the four wholesale distributors in Miami to whom the drugs had been shipped only one month before Borka's arrest. Agent Corbitt went to these four distributors to determine which retail outlets had purchased the drugs. He learned that only seven of approximately 400 local pharmacies had purchased that drug within the requisite time frame. Of those seven, he was able to determine that the drugs were probably coming from one of two pharmacies, Sharon Drugs or Washington Pharmacy. His investigation focused on Sharon Drugs, defendant's pharmacy, when he inadvertently learned during a separate investigation that the owner of Sharon Drugs owned a second pharmacy and was going to purchase a third. This information tied in with Borka's description of his ultimate source.

On April 23, 1976, pursuant to 21 U.S.C.A. § 873 and standard DEA policy, which both call for cooperation with local authorities, Corbitt informed Agent Vernon Bell of the Florida Board of Pharmacy of his investigation. Bell agreed with Corbitt that Sharon Drugs was the most likely suspect, since he thought that Washington Pharmacy could handle the quantity of drugs it was buying in the regular course of its business, while Sharon Drugs could not.

That same afternoon, Bell went to Sharon Drugs and examined defendant's records, as he is allowed to do under the Florida law regulating pharmacists. Fla.Stat. Ann. § 465.131 (West Supp.1976). Bell informed Corbitt that Sharon Drugs could not account for a large amount of the drugs it had purchased.

Corbitt then applied for and obtained an administrative search warrant from a federal magistrate. After being presented with the warrant and read his *Miranda* rights, Schiffman executed a waiver of

rights form and gave an oral and written statement to Corbitt in which he admitted his guilt. Corbitt conducted an inventory and accounting, deducting the prescriptions written from the amounts purchased. The investigation showed that over 90% of defendant's drug purchases were unaccounted for.

Defendant moved to suppress the "fruits" of the search, including his admission and the trial testimony of a witness allegedly discovered because of defendant's statements. Denying the motion to suppress, the district court found defendant guilty on all three counts. Defendant appeals solely on the ground that the court erred in denying the motion to suppress.

Defendant argues that the information furnished to federal agent Corbitt by state agent Bell could not be used to supply probable cause for the search warrant. Florida Statute § 465.131 authorizes the Florida Board of Pharmacy to conduct warrantless inspections of pharmacies within Florida. The Supreme Court of Florida has held that information obtained from warrantless inspections under that section cannot be used to aid criminal prosecutions under Florida's drug laws. *Olson v. State*, 287 So.2d 313 (Fla.1973). Before we need decide what use federal authorities may make of information received from the Florida Board of Pharmacy, we must first determine whether the information from state agent Bell was necessary to the validity of the federal warrant. This Court has previously held that even though the application for a search warrant may contain prohibited information, if the other facts set forth in the application would sustain the warrant, its issuance will not be condemned. *See United States v. Hunt*, 496 F.2d 888, 894–895 (5th Cir. 1974).

*Probable Cause Under § 880(d)*

The warrant here was issued under 21 U.S.C.A. § 880(d) of the Federal Drug Abuse Prevention and Control Act of 1970. This section permits the judicial issuance of warrants for administrative inspections, and seizures appropriate to such inspections, on a showing of probable cause. The Act

defines probable cause differently from that which the courts have required for fourth amendment search warrants.

> For the purposes of this section, the term "probable cause" means a valid public interest in the effective enforcement of this subchapter or regulations thereunder sufficient to justify administrative inspections of the area, premises, building, or conveyance, or contents thereof, in the circumstances specified in the application for the warrant.

21 U.S.C.A. § 880(d)(1).

The initial inquiry is whether the warrant application, with the information provided by the state agent excised, provides sufficient facts to satisfy this statutory standard of probable cause. The critical paragraph of the application, after reciting that Sharon Drugs was registered as a retail pharmacy with the DEA, recited:

> 2. The establishment has not been previously inspected by the Drug Enforcement Administration. Probable cause does exist, because the registrant's purchasing records (Federal Order Forms) indicates large purchases of Schedule II drugs, (Tuinal 200 mg and Tuinal 100 mg) *which a State investigation, initiated on April 23, 1976 was unable to account for either by the firm's dispensing records or inventory.*

The italicized words are those to be eliminated from consideration of the validity of the application. The application then stated that this is a "scheduled inspection undertaken as a part of a statutorily authorized inspection program designated to assure compliance with the Comprehensive Drug Abuse Prevention and Control Act of 1970 . . . . ."

The test is whether these facts show "probable cause," defined as a valid public interest sufficient to justify an administrative search of the premises.

The precise question is whether large purchases of controlled drugs by a registered retail pharmacy alone create such a valid public interest. We hold that they do.

The Comprehensive Drug Abuse Prevention and Control Act of 1970 was enacted to provide a system for the control of drug traffic and to prevent the abuse of drugs. Congress recognized that many controlled drugs have "a useful and legitimate medical purpose," but that, at the same time, improper use of these and other drugs has a detrimental effect on people's health. *See* 21 U.S.C.A. § 801(1)–(2). The statutory scheme envisioned by the Act is one of control through registration of and record-keeping by all those within the "legitimate distribution chain," and prohibition of transactions outside the legitimate distribution chain. *See* [1970] U.S.Code Cong. & Admin.News 4566, 4569. All those who manufacture, distribute or dispense any controlled substance must be registered with the Attorney General. 21 U.S.C.A. §§ 822–823. Registrants are required to keep certain records, which must be made available for inspection. *Id.* § 827. The statute informs registrants the Government is authorized to inspect their establishments in accordance with the rules and regulations promulgated under the statute. *Id.* § 822(f). Thus, a potential registrant is put on notice that, as a condition of engaging in the manufacture or distribution of drugs, he subjects himself to the regulatory system imposed by the Act including administrative inspections by the DEA as authorized by § 880.

With this general program of control, Congress then provided for administrative inspections upon a showing of probable cause defined as "a valid public interest in the effective enforcement of this subchapter or regulations thereunder sufficient to justify administrative inspections . . . in the circumstances specified in the application for the warrant." 21 U.S.C.A. § 880(d)(1).

Two cases have held that the quantity of drugs purchased satisfies this probable cause requirement. In *United States v. Greenberg*, 334 F.Supp. 364, 367 (W.D.Pa. 1971), a district court found the valid public interest met by the "suspicious actions" in the registrant's purchases of "extraordinary quantities" of drugs. In *United States v. Montrom*, 345 F.Supp. 1337 (E.D.Pa.1972), *aff'd without opinion*, 480 F.2d 918, 919 (3d Cir. 1973), the court found that a valid

public interest was established by allegations of the registrant's "mammoth purchases."

Defendant Schiffman would contend there is a difference between "extraordinary" and "mammoth" purchases and "large" purchases. There is no meaningful distinction between allegations of "extraordinary," "mammoth," and "large" purchases. All three words are essentially synonymous, employed in a comparative sense to show that the registrant was purchasing a sufficient quantity of drugs to be of concern in the enforcement of the Act.

■ Defendant contends that the warrant application in no way shows that "large" purchases might not have been normal for the particular pharmacy. A pharmacy might have large purchases simply because it is a large store with a high volume of business. We need not decide whether an allegation of apparently normal but nonetheless large purchases would justify the issuance of a warrant. A fair reading of the present application is that Agent Corbitt was using the word "large" in its comparative sense, i. e., larger than would be expected of that type pharmacy, and that the magistrate understood it as such. Corbitt's testimony at the motion to suppress tends to confirm this. He stated that a 1000-unit bottle would be "an unusual purchase" for most pharmacies, and that his investigation of the distributor's records "indicated to [Corbitt] that the pharmacy was purchasing more drugs than it could legitimately dispose of." Search warrant applications are to be interpreted in a commonsense and realistic fashion. *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Giving the words a commonsense interpretation, the application sets forth sufficient facts to establish statutory probable cause.

Although this Court has never reached the issue and we do not reach it here, several courts have held that there is a "valid public interest" in ensuring compliance with the recordkeeping requirements of the Act, and that a warrant may be issued simply because a substantial period of time has passed since the last inspection.

*United States v. Goldfine*, 538 F.2d 815, 818–819 (9th Cir. 1976); *United States v. Prendergast*, 436 F.Supp. 931, 932 (W.D.Pa. 1977); *United States v. Greenberg*, 334 F.Supp. 364, ·367 (W.D.Pa.1971). Support for this position can be found in *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). The Supreme Court there said that probable cause to inspect would exist if reasonable legislative or administrative standards for conducting an inspection are satisfied, and that such standards could "be based upon the passage of time." 387 U.S. at 538, 87 S.Ct. at 1736. DEA regulations say it is the intent of the agency to conduct inspections of distributors of controlled substances once every three years. 21 C.F.R. § 1316.13 (1977). In the present case, the warrant application alleged that defendant's pharmacy was registered under the Act and had never previously been inspected.

*Constitutionality of § 880(d)*
*Probable Cause*

■ The "valid public interest" standard of probable cause established by § 880(d)(1), although clearly less stringent than the probable cause required for the constitutional issuance of a criminal search or arrest warrant by *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), nevertheless is constitutional under the Supreme Court's administrative search cases.

The warrant provisions of § 880 were inserted in the Act.in response to *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). *See* [1970] U.S.Code Cong. & Admin.News 4566, 4623. In those cases, the Court held that a warrant is needed for administrative fire, health, and housing inspections of residences and businesses, but that the standard of probable cause in such situations would be a "flexible standard of reasonableness." In *See*, the Court reserved decision on the constitutionality of licensing statutes which authorized warrantless inspections. 387 U.S. 546, 87 S.Ct. 1737.

In *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), the Supreme Court suggested an answer to the question it had reserved in *See.* The Court indicated that Congress could authorize warrantless inspections of liquor dealers because of the history of regulation of the liquor industry, "long subject to close supervision and inspection." 397 U.S. at 77, 90 S.Ct. at 777. It found, however, that the relevant statute did not authorize forcible entries without a warrant.

In *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), the Court upheld warrantless inspections of dealers in firearms under the Gun Control Act of 1968. The Court noted that federal regulation of interstate traffic in firearms is "not as deeply rooted in history as is governmental control of the liquor industry," but that federal regulation was still important. 406 U.S. at 315, 92 S.Ct. at 1596. The Court deemed inspection "a crucial part of the regulatory scheme," since it assures that weapons are distributed through "regular channels," and prevents sales to "undesirables." *Id.* at 315–316, 92 S.Ct. at 1596. The Court noted that the inspection scheme poses only a limited threat to the dealer's justifiable expectation of privacy, because the statute informs him of the scope and purpose of the inspections, and when the dealer "chooses to engage in this pervasively regulated business and to accept a federal license," he does so knowing that his business will be subject to inspection. *Id.* at 316, 92 S.Ct. at 1596. The Court held that under this situation Congress could constitutionally authorize warrantless regulatory inspections so long as they are carefully limited in time, place, and scope.

The pharmaceutical industry is a "pervasively regulated business" like the liquor and gun industries. *United States v. Montrom*, 345 F.Supp. 1337, 1340 (E.D.Pa.1972), *aff'd without opinion*, 480 F.2d 918, 919 (3d Cir. 1973). Dealers in drugs, like dealers in firearms, are required to be federally licensed. The dealer accepts the license knowing that § 880 authorizes inspection of his business. Inspections are essential to the federal regulatory scheme to ensure that drugs are distributed only through "regular channels" and not diverted to illegal uses.

The inspections pose only a limited invasion of the dealer's privacy interest, since the statute limits them in time, place, and scope. The inspection may be made only during normal business hours. § 880(d)(2). The inspection may only be of "controlled premises," defined as places where controlled substance or records required by the Act are kept. § 880(a)(1). The inspectors may only inspect controlled substances, equipment used in handling those drugs, required records, and other documents needed to verify the records. § 880(b)(1). Other limitations are contained in § 880(d)(1)–(4). These restrictions have been found to satisfy *Biswell. United States v. Montrom*, 345 F.Supp. 1337, 1340–1342 (E.D.Pa.1972), *aff'd without opinion*, 480 F.2d 918, 919 (3d Cir. 1973). *See also United States ex rel. Terraciano v. Montanye*, 493 F.2d 682, 683 (2d Cir.) (in upholding New York's warrantless drug inspection statute, the court suggested that New York consider amending its statute to incorporate the safeguards found in 21 U.S.C.A. § 880), *cert. denied*, 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974).

The warrant requirement of § 880 provides registrants with less protection than a requirement of *Aguilar-Spinelli* probable cause, but it provides more protection than a registrant would have if warrantless inspections had been authorized, which the cases indicate might be constitutional.

The "valid public interest" language of § 880 follows the definition of probable cause for an administrative search warrant suggested by the Supreme Court's opinion in *Camara v. Municipal Court*, 387 U.S. 523, 539, 87 S.Ct. 1727, 1736, 18 L.Ed.2d 930 (1967):

> If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant.

We hold § 880(d)'s inspection scheme to be constitutional.

The district court did not err in denying defendant Schiffman's motion to suppress.

There was a sufficient allegation of probable cause in the warrant application without considering information obtained from the Florida Board of Pharmacy.

AFFIRMED.