COMMONWEALTH vs. EDWARD M. FRODYMA.

Hampshire.    February 4, 1982. — June 3, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Search and Seizure*, Controlled substances, Warrant, Administrative
    inspection.  *Constitutional Law*, Search and seizure.

Review of the statutes and cases pertaining to the scope of administrative
    inspections and the standard of probable cause under which adminis-
    trative inspection warrants are issued.  [438-445]

Evidence seized from a pharmacy pursuant to an administrative inspec-
    tion warrant was properly suppressed where the warrant was made
    out on a multipurpose printed form granting authorization to seize
    "any and all items which are used in any violation of any provision of
    M.G.L. c. 94C" and supported by an affidavit printed on a similar
    standardized form, and where the application for the warrant failed
    to establish administrative probable cause to seize records from the
    pharmacy.  [445-449]

INDICTMENT found and returned in the Superior Court
Department on April 17, 1980.

A pretrial motion to suppress evidence was heard by
*Moriarty*, J.

An application for an interlocutory appeal was allowed
by *Nolan*, J., in the Supreme Judicial Court for the county
of Suffolk and was transferred by him to the Appeals Court.

The Supreme Judicial Court ordered direct review on its
own initiative.

*Stephen R. Kaplan*, Assistant District Attorney, for the
Commonwealth.

*Samuel A. Marsella* for the defendant.

LIACOS, J.    On April 1, 1981, a judge of the Superior
Court granted the defendant's pretrial motion to suppress
evidence.[1]  The evidence was seized during a search of a

[1] Subsequently, on June 9, 1981, the Commonwealth filed a motion
with the trial judge to vacate the suppression order in light of two recent

pharmacy. A single justice of this court granted leave to the Commonwealth to prosecute an interlocutory appeal and transmitted the matter to the Appeals Court. G. L. c. 278, § 28E. Mass. R. Crim. P. 15 (b) (2), 378 Mass. 882 (1979). We transferred the appeal here on our own motion. We affirm the order of the trial judge.

The facts, taken from the judge's findings and rulings, are as follows: The defendant was a registered pharmacist and operated a pharmacy in the town of Hatfield. On March 5, 1980, shortly after the start of the business day, Joseph La-Belle, an agent of the Board of Registration in Pharmacy, came on the premises to conduct a routine inspection. See G. L. c. 13, §§ 22 & 25. At that time, the pharmacy was in the sole control of a clerk, who was not a registered pharmacist.[2] LaBelle asked the clerk to call the defendant, who arrived shortly thereafter. At LaBelle's request, the defendant produced copies of eleven order forms used to purchase controlled substances and a prescription file recording their sale. G. L. c. 94C, § 15. After comparing these forms with an inventory of controlled substances on hand, LaBelle concluded that the defendant had not accounted for substantial amounts of controlled substances. The absence of these substances was not explained by any theft or other loss, since the defendant denied any such event had occurred.

LaBelle proceeded shortly thereafter to the District Court in Hampshire County, where he applied for an administrative search warrant. The affidavit in support of the warrant was on a printed form purportedly drawn to comply with the provisions of G. L. c. 94C, § 30 (f).[3] The warrant,

decisions of this court. *Commonwealth* v. *Taylor*, 383 Mass. 272 (1981). *Commonwealth* v. *Kenneally*, 383 Mass. 269 (1981) . The motion was denied.

[2] The judge found that State regulations require that a registered pharmacist be in attendance at all times during store hours. No such regulation appears in the record, but the parties do not contest the propriety of this finding.

[3] On the affidavit the applicant had only to fill in his or her name and position and the name, address, and registration number of the controlled premises. Even less information was required to be inserted in the warrant form.

which was also on a printed form, granted authorization to seize "any and all items which are used in any violation of any provision of M.G.L. c. 94C . . . or which are themselves contraband, including any or all of the following: . . . 3. Records, files, papers, or other documents which indicate violations of M.G.L. c. 94C and F.L. Title 21 or regulations promulgated thereunder."[4] Armed with the warrant, and accompanied by a State trooper, LaBelle returned to the pharmacy and seized the eleven order forms and the prescription file which he had previously inspected.

The judge ordered the suppression and return of the records seized because he concluded that the portion of the warrant authorizing the seizure of records was not sufficiently specific. The judge defined the problem aptly, noting that "[t]he difficulty stems . . . from the Board's attempt to draft a form warrant which can be used in any situation. That objective necessarily runs contra to the specificity required by the Fourth Amendment. . . . It is undoubtedly true that such a form would be most convenient from an

---

[4] The warrant in its entirety commanded the seizure of: "any and all items which are used in any violation of any provision of M.G.L. c. 94C and F.L. Title 21, or which evidence any violation of M.G.L. c. 94C and F.L. Title 21, or which are themselves contraband, including any or all of the following: 1. Patient, and or customer records which indicate violations of said G.L. c. 94C and F.L. Title 21 or which constitute evidence of violations of the provisions of M.G.L. c. 94C and F.L. Title 21 or the regulations promulgated thereunder. 2. Controlled substances which are kept, stored, administered, dispensed, or distributed in violation of the provisions of M.G.L. c. 94C and F.L. Title 21, or which constitute evidence of violations of the provisions of M.G.L. c. 94C and F.L. Title 21 or the regulations promulgated thereunder. 3. Records, files, papers, or other documents which indicate violations of M.G.L. c. 94C and F.L. Title 21 or regulations promulgated thereunder. 4. Samples of controlled substances, containers, or labels whenever they are evidence of violations of any provision of M.G.L. c. 94C and F.L. Title 21 or the regulations promulgated thereunder, or whenever they are necessary to conduct of a reasonable inspection." The reference to "Title 21" is to 21 U.S.C. §§ 801 et seq. (1976 & Supp. IV 1980), the Federal counterpart of c. 94C. Commonwealth v. Lipomi, 385 Mass. 370, 383-384 (1982).

We note that the warrant here was served several weeks prior to our decision in Commonwealth v. Accaputo, 380 Mass. 435 (1980), interpreting the warrant requirements of G. L. c. 94C, § 30.

administrative standpoint — but administrative convenience must yield to constitutional values."[5] The judge declined, however, to frame his order in such a way as to suppress completely the documents or evidence derived from them as evidence at the defendant's trial. He reasoned that, since LaBelle's initial inspection was made with the consent of the defendant, any evidence derived from it, if otherwise competent, "was not illegally obtained and is therefore admissible."[6] Going one step further, he ruled that "since the original inspection apparently furnished probable cause to believe that the documents do constitute evidence of criminal activity, and since that inspection was perfectly legal, there should be nothing to preclude a new seizure of those documents on a properly drafted warrant."

Thus, his order suppressed only "evidence obtained from the said seized documents while they were in the control of the commonwealth, subsequent to their seizure and prior to their return to the defendant," because the warrant authorizing their seizure was overbroad.

While we agree with the judge, we conclude further that merely to affirm the suppression order because the seizure language of the warrant lacked specificity (which was available and could have been supplied) is to create the unwar-

---

[5] As if to justify the judge's concern, the Commonwealth urges the affirmation of just such a multipurpose form warrant by arguing to us that "what [LaBelle] needed was a document adapted for speedy completion by an issuing magistrate in the event that cooperation ceased or that a seizure became necessary. . . . LaBelle . . . had to do his work out in the field and . . . seek assistance from authorities who were but doubtfully knowledgeable of the Chapter 94C statutory scheme." Compare this view with the express provisions for warrantless seizures in exigent circumstances as set forth in G. L. c. 94C, § 30(g) (2) - (5).

[6] Later, in his memorandum and order on the Commonwealth's motion to vacate the suppression order, the judge called the parties' attention to a recent decision of this court as providing a basis for the introduction of "live" testimony of an informant, based on his memory of certain conversations, the illegally taped versions of which had been suppressed. Commonwealth v. Jarabek, 384 Mass. 293, 297-300 & n.7 (1981). The defendant does not contest this aspect of the judge's order; therefore, we do not reach it.

ranted impression that an administrative inspection warrant may be issued for the purpose of seizing evidence to be used in a criminal prosecution. An administrative inspection warrant, granted under a lesser standard of probable cause than is required in traditional criminal searches and seizures,[7] cannot be used as a device to seize evidence for use in a criminal prosecution.

We base our conclusion on a simple premise: The purposes for which a warrant is sought should determine the standards under which it is issued. The particularity requirement is but one way to ensure against a greater exercise of power under a warrant "than that . . . for which probable cause had been established." *Matter of Lafayette Academy, Inc.*, 610 F.2d 1, 5 (1st Cir. 1979). Our primary focus, then, is a comparison of the power granted under the warrant at bar with the probable cause established for its issuance.

In most significant respects, our decision in this case is dictated by the principles underlying our recent decisions in *Commonwealth* v. *Lipomi*, 385 Mass. 370 (1982), and *Commonwealth* v. *Accaputo*, 380 Mass. 435 (1980). As we observed in *Lipomi*, "the warrant procedure delineated by G. L. c. 94C, § 30, is specifically designed to ensure that inspections authorized by the statute will meet Fourth Amendment standards of reasonableness. The statute explicitly limits both the purpose and the scope of the inspections it authorizes. See G. L. c. 94C, § 30 (*a*) & (*f*) . . . ." *Supra* at 374.[8] As for the purpose of these inspections, we

---

[7] Under G. L. c. 94C, § 30 (*b*), as amended by St. 1972, c. 806, § 21, "[f]or the purposes of the issuance of administrative inspection warrants, probable cause exists upon a showing of a reasonable and valid public interest in the effective enforcement of this chapter or rules or regulations hereunder under a general plan sufficient to justify administrative inspection of an area, premises, buildings or conveyances in the circumstances specified in the application for such warrant."

This lesser standard of probable cause is central to our discussion.

[8] Unlike the searches in *Lipomi* and *Accaputo*, the search in the case at bar was carried out by Agent LaBelle pursuant to the authority of G. L. c. 13, § 25. This fact does not, however, detract from the warrant pro-

said in *Commonwealth* v. *Accaputo, supra* at 442, that "[a]dministrative inspection warrants issued pursuant to G. L. c. 94C, § 30, authorize entry for the *limited* 'purpose of inspecting, copying and verifying the correctness of records, reports or other documents required to be kept by a registrant on controlled premises and for the seizure of property appropriate to such inspection.' G. L. c. 94C, § 30 (*a*)" (emphasis supplied). [9]

Consonant with the limited purpose of an administrative inspection is the limited scope of the inspection: "(*f*) A person executing an administrative inspection warrant may:

---

cedures and requirements for an administrative search of a retail pharmacy under G. L. c. 94C, § 30. *Commonwealth* v. *Lipomi, supra* at 387.

[9] A not unrealistic reading of the seizure language in the sentence quoted would limit the property for which seizure may be requested under an administrative inspection warrant to that property necessary to verify compliance with the record-keeping and inventory requirements of G. L. c. 94C. This would allow for the seizure of records, reports, or other required documents where inspection, copying, or verification at the controlled premises was impracticable. In addition, by this reading, only samples of inventory could be obtained during an inspection pursuant to § 30. G. L. c. 94C, § 30 (*f*) (4). Further support for this proposition is found in § 47 of c. 94C, dealing with forfeitures under the Controlled Substances Act (Act). Under § 47 (*a*) (4), all books and records used in violation of the Act are subject to forfeiture. Such property may be declared forfeit "by any court having . . . final jurisdiction over any related criminal proceeding brought under any provision of this chapter." G. L. c. 94C, § 47 (*b*), as amended through St. 1977, c. 556, § 2. During the pendency of such proceedings the court may, at the request of the Commonwealth, order ex parte the seizure of the property for which forfeiture is sought, but "only upon a showing of probable cause, and the application therefor and the issuance, execution and return thereof shall be subject to the provisions of chapter two hundred and seventy-six, so far as applicable." G. L. c. 94C, § 47 (*f*), inserted by St. 1971, c. 1071, § 1. Compare *United States* v. *Jamieson-McKames Pharmaceuticals, Inc.*, 651 F.2d 532, 540 n.17 (8th Cir. 1981), cert. denied, 455 U.S. 1016 (1982) ("Although 21 U.S.C. § 374 authorizes FDA agents to take samples of drugs during an inspection, and in rem action is required if large quantities . . . are to be seized").

We think it unlikely that the Legislature would require the functional equivalent of a traditional search warrant under G. L. c. 276 in order to seize property once criminal proceedings have been initiated and yet allow for the seizure of the same items under warrant, at an earlier time, on anything less than the same standards.

(1) use reasonable force and means to execute the warrant; (2) inspect and copy records required by this chapter to be kept; (3) inspect, within reasonable limits and in a reasonable manner, controlled premises and all pertinent equipment, finished and unfinished material, containers and labeling found therein, and except as provided in subsection (*h*), all other things therein, including records, files, papers, processes, controls and facilities bearing on violation of this chapter; and (4) inventory any stock of any controlled substance therein and obtain samples thereof." G. L. c. 94C, § 30 (*f*), inserted by St. 1971, c. 1071, § 1. *Commonwealth* v. *Accaputo, supra.*[10]

The issuance of administrative inspection warrants has been limited, then, to situations where, in the performance of a regulatory function under c. 94C, it is necessary to inspect, audit, or sample the premises, equipment, records, or material covered by the statute. Indeed, the entire justification for "[t]he lesser standard of probable cause required to obtain an administrative inspection warrant is inexorably linked to the limited scope of an administrative search." *Id.* at 441. See *Commonwealth* v. *Lipomi, supra* at 373-374.[11]

We have previously recognized that "[t]he inspection warrant requirement of § 30 reflects a legislative accomodation of the respective enforcement needs of the State with the privacy rights of individuals with regard to the pervasively regulated pharmaceutical business." *Common-*

---

[10] General Laws c. 94C, § 30 (*h*), inserted by St. 1971, c. 1071, § 1, provides: "An inspection authorized by this section shall not extend to financial data, sales data, other than shipment data or pricing data unless the owner, operator or agent in charge of the controlled premises consents in writing."

[11] The lesser standard of probable cause is set forth in G. L. c. 94C, § 30 (*b*). See note 7, *supra*. The language of § 30 (*b*) tracks the probable cause requirement in the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 880 (1976), and both derive from the probable cause standard enunciated in *Camara* v. *Municipal Court of the City & County of San Francisco*, 387 U.S. 523 (1967). *Commonwealth* v. *Accaputo*, 380 Mass. 435, 441 n.7 (1980).

*wealth* v. *Lipomi, supra* at 383. The "legislative accomodation," which resulted in the lesser standard of probable cause set forth in § 30 (*b*), is justified because of the limited scope of the administrative search. *Commonwealth* v. *Accaputo, supra* at 441-442. Such a limited scope permits inspections of the regulated pharmaceutical business under the authority of warrants which are issued with less than criminal probable cause. *Id.* at 442. See *Marshall* v. *Barlow's, Inc.*, 436 U.S. 307, 320-321 (1978); *Camara* v. *Municipal Court of the City & County of San Francisco*, 387 U.S. 523, 537-539 (1967).

This relaxed standard of probable cause applies typically to a request to make a routine compliance inspection of the controlled premises pursuant to a general plan. The standards for conducting such an inspection are satisfied upon a "showing that a specific business has been chosen for [a] . . . search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area." *Marshall* v. *Barlow's, Inc., supra* at 321 (establishing probable cause for an OSHA search pursuant to 29 U.S.C. § 657[a] [1976]). Such a showing, incorporated into the resulting warrant, provides "assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria" (footnote omitted). *Id.* at 323.[12] Under the "neutral criteria" stand-

---

[12] The footnote to the passage quoted above in *Marshall* v. *Barlow's, Inc.*, 436 U.S. 307 (1978), looked with disfavor on a portion of the application for the inspection order in that case. The application "represented that 'the desired inspection and investigation are . . . part of an inspection program designed to assure compliance with the Act.'" *Id.* at 323 n.20. A comparison with the application in this case reveals only a stated purpose to determine whether the items to be inspected "conform with the provisions of M.G.L. c. 94C." The inspection was to be carried out for the following purposes: "(a) To inspect, copy, and or verify all records, reports, files, papers, and other documents which are required by the

ard, as applied to controlled premises under Title 21, probable cause for an administrative inspection has been established by a showing that the premises had never previously been inspected. See *United States* v. *Voorhies*, 663 F.2d 30, 33 (6th Cir. 1981); *United States* v. *Prendergast*, 585 F.2d 69, 70 (3d Cir. 1978); *United States* v. *Goldfine*, 538 F.2d 815, 819 (9th Cir. 1976).

Alternatively, probable cause for various types of administrative inspections has been established by presenting "specific evidence of an existing violation" of the regulatory scheme. See *Marshall* v. *Barlow's, Inc.*, supra at 320. Cf. *Delaware* v. *Prouse*, 440 U.S. 648, 662 (1979) ("any quantum of individualized, articulable suspicion"). Often, such investigations are based on complaints received by the regulatory agency. *Blackie's House of Beef, Inc.* v. *Castillo*, 659 F.2d 1211, 1213-1214 (D.C. Cir. 1981), cert. denied, 455 U.S. 940 (1982). *Burkart Randall Div. of Textron, Inc.* v. *Marshall*, 625 F.2d 1313, 1317 (7th Cir. 1980). Cf. *Marshall* v. *Barlow's, Inc.*, supra at 320 n.16. Typically, where such nonroutine inspections are upheld, there is "no possibility of criminal action" and thus no necessity to comply with the more stringent standards of criminal probable cause. *Burkart Randall Div. of Textron, Inc.* v. *Marshall*, supra at 1318. *Blackie's House of Beef, Inc.* v. *Castillo*, supra at 1218. But see *Marshall* v. *Horn Seed Co.*, 647 F.2d

provisions of M.G.L. c. 94C and F.L. Title 21. (b) To inspect the controlled premises, including all pertinent equipment, finished and unfinished material, containers and labeling, processes and controls relating to the administration, dispensing or distribution of controlled substances, in order to determine whether or not they conform with the provisions of M.G.L. c. 94C and F.L. Title 21. (c) To inventory any stock or supply of controlled substances which are kept or stored on the controlled premises. (d) To inspect all security measures and devices for keeping or storing the controlled substances, to determine whether or not they conform with the provisions of M.G.L. c. 94C and F.L. Title 21. (e) To inspect any and all Inventory Reports which are required by the provisions of said M.G.L. c. 94C and F.L. Title 21." Cf. *Hawaii Psychiatric Soc'y* v. *Ariyoshi*, 481 F. Supp. 1028, 1050 (D. Haw. 1979) (standards contemplated by the Court [in *Barlow's*] require something more than conclusory showing that a valid public interest exists).

96, 102-104 (10th Cir. 1981) (when warrant application based on "specific evidence" of violations, must be plausible basis to believe violation likely to be found; standard is relaxed, but not a sham).

Several courts have upheld administrative searches under the lesser standard of probable cause even when the administrative inspection warrant which was sought was based on suspicions which, if proven, could result in criminal charges. Such is the case where, for example, the application for the warrant reveals that a pharmacist or physician, the subject of the search, had recently made unusually large purchases of controlled substances. See *Matter of Searches & Seizures Conducted on October 2, and 3, 1980*, 665 F.2d 775, 777 (7th Cir. 1981); *United States* v. *Schiffman*, 572 F.2d 1137, 1140-1141 (5th Cir. 1978); *United States* v. *Montrom*, 345 F. Supp. 1337 (E.D. Pa. 1972), aff'd mem., 480 F.2d 918 (3d Cir. 1973); *United States* v. *Greenberg*, 334 F. Supp. 364, 367 (W.D. Pa. 1971).[13] See generally Annot., 19 A.L.R. Fed. 736 (1974).

We are aware of the wide variety of agent enforcement activities which assume many forms and are often not rightfully treated as law enforcement functions. See *Blackie's House of Beef, Inc.* v. *Castillo, supra* at 1224 & n.15 and cases cited. In some circumstances it might not be possible to set clearly a line of demarcation between regulatory and criminal enforcement activities. In the drug enforcement field, however, the task is not so difficult. Under the authority given by c. 94C, § 30, there is a significant difference between entries for the performance of a regulatory function and those for criminal enforcement purposes, and

---

[13] The applications for the inspection warrant in *Commonwealth* v. *Accaputo*, which were not incorporated by reference in the warrant itself, alleged both that the pharmacy in question had never been inspected and that it had recently received large quantities of controlled substances. Compare *Matter of Searches & Seizures Conducted on October 2, and 3, 1980*, 665 F.2d 775, 777 (7th Cir. 1981). We did not reach the issue in *Commonwealth* v. *Accaputo, supra*, whether the warrant was sufficient to support the inspection because the defendant in that case failed to raise it. *Id.* at 444 n.11.

"[a]n administrative inspection warrant can support only this limited type of intrusion [for regulatory purposes]; it cannot support the type of search attendant on a criminal investigation." *Commonwealth* v. *Accaputo*, 380 Mass. 435, 442 (1980).

Thus, administrative probable cause is the appropriate standard for the issuance of an inspection warrant only so long as the investigation, even if nonprogrammatic (i.e., even if in response to a suspicion which does not rise to the level of criminal probable cause), "retains its noncriminal character." *Burkart Randall Div. of Textron, Inc.* v. *Marshall, supra* at 1318 n.5. An administrative inspection, being a limited procedure, cannot be used to avoid the traditional requirements for obtaining a search warrant. For this reason, an administrative inspection warrant, issued under the lesser standard of probable cause but with a presupposition of criminal activity, would be fatally flawed. See *Matter of Searches & Seizures, supra* at 777 (Swygert, J., concurring); *Blackie's House of Beef, Inc.* v. *Castillo, supra* at 1225 n.16; *Burkart Randall Div. of Textron, Inc.* v. *Marshall, supra* at 1318.

Our conclusion that the records seized under this warrant must be suppressed is supported by reference to 21 U.S.C. §§ 801 et seq. (1976 & Supp. IV 1980), the Federal counterpart of c. 94C. See *Commonwealth* v. *Lipomi, supra* at 384. The authority to utilize administrative inspection warrants is contained in §§ 871 to 886, the "Administrative and Enforcement Provisions." In addition to administrative inspection warrants under § 880, authorization is given for traditional search warrants under § 879, and for subpoenas under § 876. Cf. *United States* v. *Abrams*, 615 F.2d 541, 547 (1st Cir. 1980) (usual method of obtaining voluminous business records for detailed examination is by subpoena). This portion of the statutory scheme demonstrates to us the proper role of the § 30 administrative inspection warrant. Because of the public interest in monitoring the manufacture and distribution of controlled substances, the Legislature has allowed, within the narrow limits discussed

above, for the inspection of certain premises on a lesser standard of probable cause. If such inspection discloses evidence of wrongdoing, knowledge of this evidence may "be used to establish probable cause for the issuance of a criminal investigative search warrant or in prosecution." *Michigan* v. *Tyler*, 436 U.S. 499, 508 (1978), quoting the Michigan Supreme Court in the same case, 399 Mich. 564, 584 (1977). This advantage, afforded the government with regard to controlled premises, does not permit the administrative inspection warrant to be used as a subterfuge in avoidance of the probable cause burden that must be met to support a criminal investigative search.[14] As the court held in *United States* v. *Lawson*, 502 F. Supp. 158, 165 (D. Md. 1980), "once the purpose behind the search shifts from administrative compliance to a quest for evidence to be used in a criminal prosecution, the government may constitutionally enter the premises only upon securing a warrant supported by full probable cause." See *Michigan* v. *Tyler, supra* at 512.

A glance at the application for the warrant in the case at bar shows that it fails to follow any of the alternative methods noted above as needed to establish administrative probable cause. No facts are set forth by which a neutral magistrate could measure the reasons for the desired intrusion against objective standards. See *Delaware* v. *Prouse,*

---

[14] Where the authorities have obtained administrative inspection warrants while having probable cause to suspect criminal activity in violation of Title 21, the warrants have been upheld in some cases. *United States* v. *Jamieson-McKames Pharmaceuticals, Inc., supra* at 541 & n.19. *United States* v. *Prendergast,* 585 F.2d 69, 71 (3d Cir. 1978). *United States* v. *Goldfine,* 538 F.2d 815, 818-819 (9th Cir. 1976). See *United States* v. *Wilbur,* 545 F.2d 764, 766 (1st Cir. 1976). See generally 3 W.R. LaFave, Search and Seizure § 10.2, at 226-229 (1978 & Supp. 1982).

These decisions "blur the distinctions between regulatory and criminal enforcement functions. See H.R. Rep. No. 1444, 91st Cong., 2d Sess., *reprinted in* [1970] U.S. Code Cong. & Adm. News, pp. 4566, 4566-76; S. Rep. No. 925, 93d Cong., 2d Sess., *reprinted in* [1974] U.S. Code Cong. & Ad. News, pp. 5971, 5972-74." *United States* v. *Lawson,* 502 F. Supp. 158, 164-165 (D. Md. 1980). See *United States* v. *Russo,* 517 F. Supp. 83, 84-86 (E.D. Mich. 1981).

*supra* at 654; *Marshall* v. *Barlow's, Inc., supra* at 323 & n.20. In effect, then, the magistrate here, by issuing the warrant, could only rubber-stamp the inference from the form application that the interests of enforcement would be served by the inspection. See *Hawaii Psychiatric Soc'y* v. *Ariyoshi,* 481 F. Supp. 1028, 1051 (D. Haw. 1979). Although to say so may highlight the obvious, a warrant insufficient for inspection purposes can hardly support a seizure of evidence found pursuant to it. Thus, we conclude that the warrant in issue was invalid not only because of its lack of particularity, but also because the application for it failed to establish administrative probable cause to seize.

*Lack of particularity.* We have earlier noted the terms of the warrant regarding the seizure of evidence of violations of G. L. c. 94C uncovered during the inspection. See note 4, *supra.* The judge ordered suppression of the evidence seized because the language used in directing seizure was overly broad. In so deciding, he was guided by sentiments we expressed in *Commonwealth* v. *Accaputo,* 380 Mass. 435 (1980), disfavoring seizure terms which are "merely a pro forma recital of all items which are seizable under the statute." *Id.* at 446-447.

In *Accaputo* we reserved the question whether a form application for an administrative search warrant could have supported the seizure of documents in that case if it had been incorporated by reference in the warrant. *Id.* The warrant in *Accaputo* had issued after application was made by a "canned" form and, in addition, by a sworn affidavit of the investigating officer which alleged that the pharmacy in question was ordering excessive amounts of several named controlled substances.[15]

While we did not decide whether the incorporation of the "canned" application in the warrant would have satisfied the "particularity" requirements of the Fourth Amendment

---

[15] The affidavit in the case at bar lacks this latter allegation.

to the United States Constitution,[16] we noted that "it is better practice, whenever possible, to frame documentary descriptions in particularized terms. See [*Matter of Lafayette Academy, Inc.,* 610 F.2d 1, 4 n.4 (1st Cir. 1979)]." *Accaputo, supra* at 447.

We are here asked to resolve the question we reserved in *Accaputo.* We have little trouble concluding that, in the circumstances of this case, the description of evidence seizable pursuant to the warrant suffered from a lack of particularity. This is so even where seizure was limited to evidence of violations of G. L. c. 94C or its Federal counterpart, 21 U.S.C. §§ 801 et seq. See *United States* v. *Abrams,* 615 F.2d 541, 545-546 (1st Cir. 1980); *United States* v. *Roche,* 614 F.2d 6, 7 (1st Cir. 1980); *Matter of Lafayette Academy, Inc., supra* at 3-4. See also note 12, *supra.* We see no reason why a grant of seizure power under an administrative inspection warrant could not be framed with greater specificity than is provided by basically tracking the language of the statute. In a routine "compliance" inspection warrant, we would expect that seizure power, if any, would, if directed at documents, at least be limited to a certain time period. See *United States* v. *Abrams, supra* at 545. Moreover, an experienced inspector should be able to inform the magistrate issuing the warrant of precisely which type of records and documents he intends to inspect, as well as the reason for so doing. The resulting warrant must be the product of this dialogue, and this fact must be apparent on its face. See *Marshall* v. *Barlow's, Inc., supra* at 323. In this case, as the judge found, "LaBelle knew precisely what documents he wished to seize when he obtained the warrant. He had already inspected those documents with Frodyma's consent and had made notes from them. When he executed the warrant, those were the only documents he

---

[16] The Fourth Amendment states, in material part: "[N]o warrants shall issue, but upon probable cause . . . and particularly describing the . . . things to be seized." Cf. art. 14 of the Declaration of Rights of the Massachusetts Constitution ("special designation"); G. L. c. 276, § 2 ("particularly describe").

seized." This information could have been inserted in both the affidavit and the warrant with remarkable ease. Cf. *Commonwealth* v. *Taylor,* 383 Mass. 272, 276 (1981) ("the particularization was available but was not used in the warrant"). Compare *VonderAhe* v. *Howland,* 508 F.2d 364, 366-370 (9th Cir. 1974) (IRS agents knew specifically which records they sought, yet obtained general warrant to search).

*Conclusion.* Administrative search warrants may not issue absent a showing of probable cause related to the administrative regulatory scheme set in G. L. c. 94C. Furthermore, if an inspection under an administrative inspection warrant uncovers evidence of criminal violations of c. 94C, the evidence may not be seized unless pursuant to a warrant issued after a showing under the traditional standards of probable cause, or unless one of the situations occurs where warrantless seizures are permitted under the statute. See G. L. c. 94C, § 30 (g).[17] Contrast *United States* v. *New England Grocers Supply Co.,* 488 F. Supp. 230, 239 (D. Mass. 1980) (no requirement that warrantless administrative inspection, valid under 21 U.S.C. § 374, be suspended, and that warrant be secured once inspectors had reason to suspect violations). Finally, we agree with the judge that

---

[17] Section 30 (g), inserted by St. 1971, c. 1071, § 1, provides: "This section shall not prevent entries and administrative inspections, including seizures of property, without a warrant: (1) if the owner, operator or agent in charge of the controlled premises consents; (2) in situations presenting imminent danger to health or safety; (3) in situations involving inspection of conveyances if there is reasonable cause to believe that the mobility of the conveyance makes it impracticable to obtain a warrant; (4) in any other exceptional or emergency circumstance where time or opportunity to apply for a warrant is lacking; or (5) in all other situations in which a warrant is not required by the laws and constitution of the commonwealth or of the United States."

the warrant in this case lacked particularity. The records and documents seized thereunder must be suppressed.[18]

*Order allowing the motion*
*to suppress affirmed.*

---

[18] We note that, to the extent the judge's order denied suppression of any evidence obtained as a result of the initial consensual inspection (see *supra* at 437), our affirmance of his order includes approval of that portion of his decision. Additionally, while it is not directly before us, we agree with his ruling, quoted at 437 *supra*, that the information gained from the original inspection may be used to establish probable cause for the issuance of a properly drafted warrant.