COMMONWEALTH *vs.* MARK D. EAGLETON
(and a consolidated case[1]).

Worcester. Suffolk. January 4, 1988. — April 19, 1988.

Present: WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Search and Seizure,* Administrative inspection, Automobile body shop.
*Constitutional Law,* Search and seizure. *Practice, Criminal,* Report.
*Supreme Judicial Court,* Superintendence of inferior courts.

For purposes of a prosecution under G. L. c. 140, § 67, of a defendant
charged with refusing to allow authorized persons to conduct an inspec-
tion of his automobile body shop and used car business, warrantless
administrative inspections conducted pursuant to G. L. c. 140, § 66,
did not constitute unreasonable searches in violation of the Fourth
Amendment to the United States Constitution, where the Commonwealth
has a substantial interest in regulating such businesses; the regulation
of the industry reasonably serves the Commonwealth's substantial inter-
est in eradicating automobile theft; and the statute placed proper limita-
tions on the time, place, and scope of inspections so as to provide a
constitutionally adequate substitute for a warrant. [203-206]
Where a warrantless administrative inspection of a closely regulated business
was proper under Fourth Amendment standards, the state of mind of
the inspecting police officers, who allegedly had a suspicion of illegal
activity on the premises, was irrelevant. [206-207]
Police officers who, while they were lawfully on the premises of a defend-
ant's automobile body shop, noticed that the defendant's license to store
inflammable fluids had expired, could properly seek complaints for
violation of G. L. c. 148, § 13, which proscribes the use of a building
to keep inflammable fluids without a license. [207]
The judge in a criminal case did not err in declining to make an interlocutory
report of the propriety of his pretrial rulings. [208]
A criminal defendant who appealed from a judgment denying him relief
under G. L. c. 211, § 3, waived his appeal by doing no more than
stating that his petition should have been allowed. [208]

COMPLAINTS received and sworn to in the Worcester Division
of the District Court Department on October 28, 1983.

---

[1] Mark D. Eagleton *vs.* Commonwealth.

In the jury session of that division, the cases were tried before *Anthony J. Tomasiello*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 26, 1984.

The case was heard by *Lynch*, J.

*Arthur Goldstein* for Mark D. Eagleton.

*Claudia R. Sullivan*, Assistant District Attorney, for the Commonwealth

WILKINS, J. We have before us two appeals which arise out of criminal complaints charging the defendant with (1) violating G. L. c. 140, § 67 (1986 ed.), by not allowing an authorized officer to conduct an inspection pursuant to G. L. c. 140, § 66 (1986 ed.),[2] and (2) storing inflammable fluids without a license in violation of G. L. c. 148, § 13 (1986 ed.). The principal issue is whether police officers constitutionally were entitled to conduct a warrantless inspection of the defendant's licensed auto body shop and used car business pursuant to G. L. c. 140, § 66. We hold that they were and thus affirm the defendant's conviction for refusal to permit the inspection.

---

[2] General Laws c. 140, §§ 66 and 67, read as follows:

Section 66. "The commissioner of public safety, the attorney general or such persons as he may designate, the police commissioner in Boston, the chief of police of any other city, the selectmen of a town or any police officer authorized by any of said officials, or any person having police powers under section twenty-nine of chapter ninety may at any time enter upon any premises used by any person licensed under section fifty-nine for the purpose of carrying on his licensed business, ascertain how he conducts the same, and examine all second hand motor vehicles or parts thereof kept or stored in or upon the premises, and all books, papers and inventories relating thereto."

Section 67. "A licensee under section fifty-nine, or a clerk, agent or other person in charge of the licensed premises, who refuses to admit thereto an officer authorized to enter the same, or who fails to exhibit to him on demand all such motor vehicles, parts thereof, and books, papers and inventories relating thereto, and any person who wilfully hinders, obstructs or prevents such officer from entering the premises or from making the examination authorized in the preceding section, shall be punished by a fine of not more than two hundred dollars or by imprisonment for not more than one year, or both."

We recite the facts in general terms.[3] The defendant operated an automobile body shop in Worcester and had a license to sell used cars. About 7:15 P.M. on September 27, 1983, two Worcester police officers entered the premises and spoke with the defendant. They had no search warrant. They identified themselves and said they were there to conduct an inspection pursuant to G. L. c. 140, § 66. The defendant refused. The officers left. The complaints against the defendant followed.

It is sufficient for our purposes to note that the defendant filed motions to dismiss the complaint that charged him with refusing to permit an inspection, claiming that the attempt to conduct a warrantless inspection of the business was not constitutional and that the defendant's refusal to authorize the inspection was, therefore, justified. The motions presented a facial attack on the constitutionality of G. L. c. 140, §§ 66, 67. The defendant also moved to dismiss the complaint charging him with storing flammable fluids without a license as required by G. L. c. 148, § 13, on grounds we discuss later. The motion judge denied all motions. A jury found the defendant guilty on both complaints.[4] The defendant appealed.

In the course of the procedings in the District Court, the defendant sought to obtain interlocutory appellate consideration of the motion judge's rulings. The motion judge declined to make an interlocutory report of the propriety of his rulings. A single justice of this court also declined to grant interlocutory relief under G. L. c. 211, § 3. The defendant has appealed

---

[3] Because the issues before us are solely concerned with the denial of pretrial motions, the evidence at trial is irrelevant. The record on appeal from the convictions indicates that there was no testimony presented on the pretrial motions, only argument of counsel based on a police report provided as part of the Commonwealth's answer to a bill of particulars and an affidavit of the defendant. The Commonwealth submitted an affidavit from a police officer which the motion judge requested in lieu of his testimony. The affidavit was filed after the judge, apparently without the prosecutor's knowledge, had denied the defendant's motions. On appeal each party recites evidence at trial, and neither objects. Proper practice on appeal is to present the record before the motion judge and to ignore the trial transcript entirely in circumstances where only the denial of pretrial motions is involved.

[4] The trial judge imposed a fine of $125 for the violation of G. L. c. 140, § 67, and for the violation of G. L. c. 148, § 13, a fine of $25.

from the judgment denying him relief under G. L. c. 211, § 3. We consolidated his two appeals in this court.

1. The defendant argues that G. L. c. 140, §§ 66 and 67, lack standards constitutionally adequate to regulate warrantless searches of licensed premises. His attack on the inspection statutes, which he describes as a facial one, rests entirely on a claimed violation of the Fourth Amendment to the Constitution of the United States concerning unreasonable searches and seizures.[5] The defendant's brief, filed in September, 1987, does not cite *New York* v. *Burger,* 482 U.S. 691 (1987), decided in June, 1987, which upheld against a Fourth Amendment challenge a search of a junkyard that was conducted pursuant to a New York statute that has many similarities to our Massachusetts statutes.[6] We consider the relevant Massachusetts statutes in light of the *Burger* opinion.

The *Burger* case is the most recent of a series of Supreme Court cases involving warrantless administrative searches of various businesses. See, in order, *See* v. *Seattle,* 387 U.S. 541 (1967) (fire inspection of commercial warehouse); *Colonnade Catering Corp.* v. *United States,* 397 U.S. 72 (1970) (business premises of liquor licensee); *United States* v. *Biswell,* 406 U.S. 311 (1972) (licensed gun dealer's storeroom); *Mar-*

---

[5] In his brief the defendant makes no argument worthy of the name based on the cognate provision in art. 14 of the Massachusetts Declaration of Rights. At oral argument, the defendant said he did rely on the State Constitution but had concluded that the reasonable search and seizure standards under the State and Federal Constitutions were the same for the purpose of this case. We need not decide whether that conclusion was correct.

This court has not dealt with the question of administrative searches in relation to the requirements of art. 14 of the Declaration of Rights. Our opinions concerning administrative searches of pharmacies have not involved State constitutional questions. See, e.g., *Commonwealth* v. *Frodyma,* 386 Mass. 434 (1982), *S.C.,* 393 Mass. 438 (1984); *Commonwealth* v. *Lipomi,* 385 Mass. 370 (1982); *Commonwealth* v. *Accaputo,* 380 Mass. 435 (1980). Administrative searches of pharmacies may be authorized pursuant to administrative search warrants. G. L. c. 94C, § 30 (1986 ed.). No parallel statute authorizes administrative search warrants for licensed premises such as the defendant's.

[6] The defendant's counsel did not seek to distinguish the *Burger* case at oral argument or in a reply brief, although the Commonwealth relied heavily on that case in its brief.

*shall* v. *Barlow's Inc.,* 436 U.S. 307 (1978) (OSHA inspections); *Donovan* v. *Dewey,* 452 U.S. 594 (1981) (inspection under Federal Mine Safety and Health Act). The lesson of these cases is that there is a right to inspect the premises of "closely regulated" industries without a warrant in certain circumstances. See *New York* v. *Burger, supra* at 699-703. The reasoning is that the licensed business operator has a reduced expectation of privacy that is outweighed by the government's need to conduct warrantless inspections in particular circumstances. See *id.* at 700. There is a further suggestion that a warrantless search conducted systematically and pursuant to clear statutory or regulatory guidelines could be more easily tolerated because there would be little or no room for arbitrary or discretionary decisions to conduct particular searches. See *Donovan* v. *Dewey, supra* at 604 (inspection of all mines at defined frequencies).[7] In its *Burger* opinion, the Supreme Court appears to be indifferent to the circumstances that led to the search of the junkyard. See 482 U.S. at 694 n.2.[8]

The determination that the junkyard operation considered in the *Burger* opinion, 482 U.S. at 700-701, was a "closely regulated" business substantially forecloses any serious argument before us that the defendant's body shop business was not closely regulated for Fourth Amendment purposes. But see *id.* at 718-721 (Brennan, J., dissenting) (questioning whether vehicle-dismantling is extensively regulated in New York). Regulation under our statutes and under the New York statute is very much the same.

---

[7] Such circumstances could also justify issuance of a warrant on a reduced or generalized showing of probable cause. See *Marshall* v. *Barlow's, Inc., supra* at 321; *Camara* v. *Municipal Court of the City of San Francisco,* 387 U.S. 523, 537, 538 (1967).

[8] Apparently no burden was placed on the prosecution to show that the warrantless inspection in this case was conducted pursuant to neutral or systematic guidelines set forth in written regulations or statutes.

Under art. 14 of the Declaration of Rights ("a right to be secure from all unreasonable searches, and seizures"), we have said that a search pursuant to standard procedures would tend to eliminate any element of discretion in a decision to conduct a search and "will have a greater chance of meeting constitutional requirements than an ad hoc practice." *Commonwealth* v. *Ford.* 394 Mass. 421, 427 (1985).

We turn then to the Supreme Court's three criteria that must be met to make reasonable such warrantless searches as were conducted in this case and in the *Burger* case. *Id.* at 703-704, 708. The *Burger* opinion determines that, first, the State had a substantial interest in regulating the vehicle-dismantling and automobile-junkyard industry (*id.* at 708), and, second, that the regulation of the industry reasonably serves the State's substantial interest in eradicating automobile theft (*id.* at 709). On these points, we see no distinction between this case and the *Burger* case.

The third criterion is that the statutory program, in terms of certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant. *Id.* at 711. The Court in the *Burger* case concluded that the New York statute was a constitutionally adequate substitute for a warrant. *Id.* at 712. It stated that the statute informed an operator of a dismantling business that inspections would be made on a regular basis by specifically authorized people, and that the inspections would not constitute discretionary acts by a government official but would be pursuant to statute. *Id.* at 715. The Court added that the statute also informed the operator of the scope of the inspection so that he would know how to comply with the statute. *Id.* at 713-714. The New York statute, which is set forth in relevant part in the margin (see also 482 U.S. at 694, n.1),[9] and the Massachusetts

[9] N.Y. Veh. & Traf. Law § 415-a5 (McKinney 1986): "Records and identification. (a) Any records required by this section shall apply only to vehicles or parts of vehicles for which a certificate of title has been issued by the commissioner [of the Department of Motor Vehicles] or which would be eligible to have such a certificate of title issued. Every person required to be registered pursuant to this section shall maintain a record of all motor vehicles, trailers, and major component parts thereof, coming into his possession together with a record of the disposition of any such motor vehicle, trailer or part thereof and shall maintain proof of ownership for any motor vehicle, trailer or major component part thereof while in his possession. Such records shall be maintained in a manner and form prescribed by the commissioner. . . . Upon request of an agent of the commissioner or of any police officer and during his regular and usual business hours, a vehicle dismantler shall produce such records and permit said agent or police officer to examine them and any vehicles or parts of vehicles which are subject to

statutes (G. L. c. 140, §§ 62, 66, 67) are in substance identical on these points.[10]

There remains for our consideration only the final aspect of the third criterion: a proper limitation on the " 'time, place, and scope' " of the inspection in order to restrain the discretion of the inspectors. See 482 U.S. at 703, 711; *United States* v. *Biswell, supra* at 315; *Donovan* v. *Dewey, supra* at 605. The place to be searched and the scope of the search are substantially the same under each law.[11]

On their faces, the two statutes differ as to when inspections may be conducted. The New York statute permits inspection of the premises of a registered dismantler only "during his regular and usual business hours." N.Y. Veh. & Traf. Law § 415-a5 (McKinney 1986). The Massachusetts statute has no similar, explicit time limitation on when an inspection may be conducted. Section 66 says that an entry to inspect may be made "at any time." Section 67, however, makes a crime of the failure of a licensee to admit an authorized inspector to inspect motor vehicles, motor vehicle parts, and a licensee's books. The search in this case occurred when the defendant and an employee were on the premises and when there was ready access for the public to enter the building. We think a fair reading of §§ 66 and 67 requires that warrantless inspections be conducted only when the premises are open for business.

---

the record keeping requirements of this section and which are on the premises. . . . The failure to produce such records or to permit such inspection on the part of any person required to be registered pursuant to this section as required by this paragraph shall be a class A misdemeanor."

[10] If the Supreme Court was able to find that the New York statute informed licensees that there would be regular inspections (although that statute says nothing explicitly to that effect), the Supreme Court would presumably reach the same conclusion as to the Massachusetts statutes, which are equally silent on this point.

[11] Section 66 of G. L. c. 140, unlike the New York statute, authorizes an entry to "ascertain how [the licensee] conducts [his licensed business]," in addition to an entry to examine vehicles and vehicle parts on the premises and all books, papers, and inventories. No attempt was made in this case to ascertain how the defendant conducted his business, and we need not consider the difference between the two statutes. We are not presented with any overbreadth challenge to § 66 in the traditional sense because First Amendment principles are not involved.

It should be noted in any event that, in this case, the defendant is charged with refusing to allow an inspection of the premises, a wrong which has nothing to do with a failure to keep proper records or with knowingly possessing stolen property (the latter being the principal crime charged in the *Burger* case). The only time when a defendant could refuse to admit an inspector is when he (or an employee instructed by him) is on the premises. Sections 66 and 67 thus have adequate time limitations to meet Fourth Amendment standards for the purposes of the crime charged in this case.[12]

Although the defendant characterizes his challenge in terms of the failure of the statutory pattern on its face to prescribe standards, he has mingled into his argument a suggestion that the police improperly used the administrative inspection process when they had a suspicion of illegal activity. The record before the motion judge, who heard no testimony, contained a police report indicating that prior to the search a policeman had often noted activity late at night at the premises, that the premises had recently been used to paint a vehicle at 2 A.M., and that such conduct was often associated with "stolen car activity." The defendant may be taken to suggest that, even if the warrantless entry was proper as part of an inspection of a closely regulated industry, it would be unconstitutional, if, at the time they entered the premises, the police had a suspicion of illegal activity. In the circumstances of this case, there is no support for this argument in Fourth Amendment terms. See *United States* v. *Nechy*, 827 F.2d 1161, 1167 (7th Cir. 1987) (generally, "if a search is objectively reasonable, the motives of the officers conducting it will not turn it into a violation of the Fourth Amendment"); *United States* v. *Acklen*, 690 F.2d 70, 73-74 (6th Cir. 1982). We are not dealing on this issue (as were the courts in the cases just cited) with the suppression of evidence of criminal activity discovered in the course of an administrative search, nor with the lawfulness of a reentry on

---

[12] We, of course, express no view on whether, in the face of a Fourth Amendment or art. 14 challenge, evidence of a crime obtained during a warrantless search under § 66 (not otherwise justifiable) would be admissible. See 3 W. LaFave, Search and Seizure § 10.2, at 24 (1988 Supp.).

premises after certain evidence of illegal activity was noted by persons who had been lawfully on the premises (see *Michigan* v. *Tyler,* 436 U.S. 499, 511-512 [1978]). The crime charged is the refusal to permit an administrative inspection. If the inspection process was proper for Fourth Amendment purposes, the state of mind of the two police officers who entered the building (or of any other police officer) is irrelevant. It was not a Fourth Amendment violation for the police to make the request for permission to inspect the premises even if the police were suspicious that criminal activity is occurring on the premises.[13] Again, we note that there is no State constitutional argument made in this case.

2. The defendant raises objections to his convictions under G. L. c. 148, § 13, for using a building to keep inflammable fluids without a proper license. The objections are based on the denial of pretrial motions to dismiss and to suppress. They are insubstantial. The police were lawfully on the premises pursuant to the invitation to the public to enter and, while there, they noted the expiration of the defendant's license. See *Commonwealth* v. *Cadoret,* 388 Mass. 148, 150-151 (1983). The fact that these particular police officers were not authorized under G. L. c. 148, § 4 (1986 ed.), to enter premises to conduct inspections for license violations is irrelevant. They could properly seek complaints for the defendant's failure to be licensed once the fact came to their attention.

---

[13] Where, however, the search is not undertaken as a regulatory search, principles governing administrative searches have no application. See *Abel* v. *United States,* 362 U.S. 217, 226 (1960); *People* v. *Pace,* 101 A.D.2d 336, 340 (1984), aff'd, 65 N.Y.2d 684 (1985). An administrative search may not be used as a subterfuge to avoid the burden of establishing probable cause to support a criminal investigative search. See *Commonwealth* v. *Frodyma,* 386 Mass. 434, 445 (1982). The defendant makes no claim of subterfuge in this case. We do point out, however, that in the *Burger* case, the Supreme Court sustained a search of the premises for criminal activity even though every administrative purpose of the search had already been achieved. See 482 U.S. at 718-719 (Brennan, J., dissenting). It seems most unlikely, in light of what was sustained in the *Burger* case, that, just because the police were suspicious, the Supreme Court would hold unlawful an attempted inspection which ended when the defendant decided not to cooperate.

3. The defendant's claim that the motion judge erred in not reporting the question of the lawfulness of the judge's rulings on pretrial motions for appellate consideration before trial is without merit. The judge had discretion whether to report the issues. Mass. R. Crim. P. 34, 378 Mass. 905 (1979).

4. The defendant has also appealed from a single justice's denial of pretrial relief under c. 211, § 3. The defendant has not argued that the single justice abused his discretion. He has waived his appeal by doing no more than stating that his petition under G. L. c. 211, § 3, should have been allowed. In any event, the single justice did not abuse his discretion.

5. The judgment denying relief under G. L. c. 211, § 3, is affirmed, as are the judgments of conviction.

*So ordered.*