COMMONWEALTH *vs.* HENRY ROSENTHAL, JR.

No. 99-P-689.

Suffolk. December 14, 2000. - October 3, 2001.

Present: BROWN, GILLERMAN, & DUFFLY, JJ.

*Controlled Substances. Practice, Criminal,* Motion to suppress. *Constitutional Law,* Search and seizure. *Search and Seizure,* Administrative inspection, Consent.

A State police officer assigned to the Massachusetts State Racing Commission at Suffolk Downs was warranted, on the basis of an informant's tip, in conducting an initial, noncustodial inquiry of the defendant concerning drug activity at the racetrack; however, where the officer, in the absence of any other lawful basis (reasonable suspicion or probable cause) to justify his actions, used the pretext of an administrative search to further detain and search the defendant's person, when the sole object of his investigation was to uncover evidence of drug activity, the fruits of the search could not be used in a subsequent criminal proceeding against the defendant. [710-716]

INDICTMENT found and returned in the Superior Court Department on September 19, 1997.

A pretrial motion to suppress evidence was heard by *Charles F. Barrett*, J., and the case was heard by *Vieri Volterra*, J.

*Harris Krinsky* for the defendant.

*Kajal K. Chattopadhyay*, Assistant District Attorney, for the Commonwealth.

DUFFLY, J. Following a jury-waived trial, a judge of the Superior Court found the defendant guilty of possession of a class B substance with intent to distribute. G. L. c. 94C, § 32A(*a*).[1] The defendant appeals, claiming error in the denial of his pretrial motion to suppress cocaine found on his person.

---

[1]On the defendant's motion for a required finding of not guilty, the trial judge reduced the charge from trafficking to possession with intent to distribute.

We reverse the judgment because we agree that the evidence was obtained during the course of a search initiated on the pretext that it was an administrative inspection, when the sole object of the investigation was to uncover evidence of illegality and there were no other circumstances justifying the warrantless search of the defendant's person.

*Facts.* We summarize facts found by the judge who heard the motion to suppress. As in *Commonwealth* v. *Alvarado*, 423 Mass. 266, 268 n.2 (1996), "[t]he motion judge's findings do not incorporate all the testimony of the police officer who [conducted the search and] testified at the hearing on the motion to suppress . . . . We also refer to uncontroverted testimony of the police officer because we infer that the motion judge accepted it in its entirety."

On March 1, 1997, at approximately 3:00 P.M., a confidential informant approached State police Officer Steven Hines, who was assigned to the Massachusetts State Racing Commission at Suffolk Downs, at his office located in a trailer on the grounds of Suffolk Downs race track. The confidential informant told him that earlier that day, as well as on the preceding day, the informant had been approached by a person he identified only as "Rosenthal," who had offered to sell him cocaine.

The informant had been the subject, some eight weeks earlier, of a Social Security Administration investigation into the illegal use of social security numbers at the track. Hines told the informant that they might be able to assist him with his legal problems related to social security fraud if he agreed to be the "eyes and ears" of the police.[2] The informant, who was given one week to provide information regarding drug problems at the track, was asked to pay attention to the "backside" of Suffolk Downs, an area containing barns, horses, grooming areas and employee residences, known for drug activity.

The informant did not provide a physical description of Rosenthal, or state that he had observed any drugs. He did tell Hines that Rosenthal was in barn 16, and that Hines should get there right away because it was feeding time and Rosenthal

---

[2]Hines, in eliciting the informant's cooperation, told him that "he might have a problem for using somebody else's name and we might eject him from the track," unless he agreed to be the "eyes and ears" of the police.

would be leaving soon.[3] Hines hurried to barn 16, where he observed a man and a woman working with a horse. The man, who did not appear to be in the process of leaving, identified himself as Rosenthal. Hines was in plain clothes, but armed with a loaded handgun. He identified himself as a State trooper and, as found by the motion judge, he "then told the defendant that he needed to search his tack room and wanted him to be present.[4] The trooper's motive was to convince the defendant that he was going to perform an administrative search of the tack room. At that time, the trooper did not have direct information that drugs were in the tack room. Rather, Trooper Hines had been told by the [confidential informant] that the defendant probably had drugs on his person."

The defendant complied, and accompanied Hines to the tack room. As the defendant walked alongside him, Hines observed a plastic bag sticking out of the defendant's sweatshirt pocket; he also observed bulges in each of the defendant's sweat pants pockets. At Hines's request, the defendant retrieved the plastic bag from his sweatshirt pocket, showing Hines that it contained medals made to be worn on a chain. By this time, the two had reached and entered the tack room, and Hines asked the defendant what was in his pants pockets. The defendant emptied his left pants pocket, removing a wallet. When Hines asked to see what was in the right pants pocket, the defendant became agitated and said there was nothing in it, and demanded to see his Horseman's Union representative. At that point Hines reached over to attempt to pat the pocket, and the defendant backed up, with hands raised and out of his pockets. Hines then told the defendant he was in fear for his life and that he would

---

[3]This was hearsay, appropriately considered at the suppression hearing. See Commonwealth v. Pena, 31 Mass. App. Ct. 201, 207 (1991). See also Smith, Criminal Practice & Procedure § 1341 (2d ed. 1983).

[4]Hines testified that he told the defendant, "I would like to do a search. . . . I told him I'd like to look through his tack room." The defendant motioned to Hines to proceed, stating "sure, no problem. Go right ahead." Hines then testified he told the defendant that he "would like to have him be present with me and that I wanted to speak to him."

search him if he did not remove what was in his pocket.[5] Hines did not remove his weapon from his holster in an effort to protect himself. At that point, the defendant asked if they could go to another area of the barn before he removed the object. There the defendant removed from his right pocket five foil packets that, according to Hines, were folded in a manner commonly used to contain cocaine. Hines reached into the right pocket of the defendant's sweat pants and pulled out a clear plastic bag that was also found to contain cocaine folded in a piece of paper.[6]

*Discussion.* With respect to these facts, we "make an independent determination of the correctness of the judge's application of constitutional principles . . . ." *Commonwealth* v. *Hill,* 49 Mass. App. Ct. 58, 62 (2000). We do not agree with the motion judge's conclusion that "an investigatory stop of the defendant" was justified on the basis of the tip. We conclude that the informant's tip was not reliable and that it failed to provide the informant's basis of knowledge.[7]

The mere possibility that a drug transaction was afoot, while

---

[5]In his suppression testimony, Hines testified that he told the defendant that if he failed to comply with his request to show him what was in the pocket, Hines would "have to use force."

[6]The motion judge found that the cocaine was in a "rolled up" paper. Because this could suggest an elongated shape, and Hines did not use the term "rolled up," we recite Hines's testimony on this point. Hines testified that the first object retrieved from the right pocket was "[v]ery small. Five packets folded in a manner, approximately half inch by two inches, in a crinkled piece of paper." The second object was variously described by Hines as a "lump," a "balled" up or "scrunched" up object, not "a rectangular shape," but a "ball" shape, "between a golf ball and a baseball."

[7]Where reasonable suspicion (the prerequisite to initiating a police investigation, *Commonwealth* v. *Lyons,* 409 Mass. 16, 19 [1990]), is based on a tip by an informant, it depends upon the reliability of the informant and his basis of knowledge. *Ibid. Commonwealth* v. *Stoute,* 422 Mass. 782, 790 (1996). Here the informant had not previously provided police with reliable information, *Commonwealth* v. *Borges,* 395 Mass. 788, 795 (1985); *Commonwealth* v. *Alvarado,* 423 Mass. 266, 271 (1996); the informant's statement was devoid of that factual detail that might have imbued it with inherent indications of veracity, *Commonwealth* v. *Lyons, supra* at 20; and police "verified no predictive details that were not easily obtainable by an uninformed bystander." *Id.* at 21.

The Commonwealth argues that because the informant's identity was known to Hines, the requirement for establishing reliability may be relaxed. The tip was not rendered reliable by the mere addition of this information. See *Com-*

not rising to the level of reasonable suspicion that a crime was being committed, did, however, permit Hines to conduct an initial, noncustodial inquiry. See, e.g., *Commonwealth* v. *Stoute*, 422 Mass. 782, 789 (1996) ("not every encounter between a law enforcement official and a member of the public constitutes an intrusion of constitutional dimensions requiring justification"). Simply put, there was nothing to prevent the officer from going to the barn, a location not imbued with expectations of privacy, to observe the defendant and engage him in conversation. This initial encounter between Hines and the defendant did not implicate constitutional protections.

We now consider whether Hines's decision to prolong the encounter by ordering the defendant to accompany him to the tack room was justified. Having observed the defendant engaged in innocent activity in the barn, Hines nevertheless sought to proceed with a criminal investigation in the hope of discovering contraband. Using the pretext that he was about to conduct an administrative search, Hines told the defendant to accompany him in a search of the tack room.

The defendant argues on appeal, as he did in support of his

---

monwealth v. *Atchue*, 393 Mass. 343, 347 (1984) ("We turn to the affidavit as a whole. . . . That a person is named . . . is *one factor* which may be weighed in determining the sufficiency of an affidavit [for a search warrant]" [emphasis original]). See, e.g., *Commonwealth* v. *Grinkley*, 44 Mass. App. Ct. 62, 69 (1997) ("It does not follow . . . that if the name of the person providing the information is disclosed, then he is by virtue of that fact alone properly characterized as a citizen-informer, entitled to the presumption of reliability. . . . [That] is one factor which may be weighed in determining reliability").

Nor were the informant's statements cloaked with reliability on the basis that they were made against the informant's penal interest. "In order for a statement to be considered . . . a statement against penal interest, there must be information . . . which tends to show that the informant would have had a reasonable fear of *prosecution* at the time that he made the statement," *Commonwealth* v. *Melendez*, 407 Mass. 53, 56 (1990) (emphasis added), and not just a concern about the imposition of an administrative sanction. See note 2, *supra.*

The tip also did not involve a report of imminent danger. Such a report may warrant investigation whereas, on the same set of facts, a tip involving drugs would not, the given inquiry to be measured by an objective standard. See *Commonwealth* v. *Alvarado, supra* at 270. Hines testified that he was not fearful and had no concern for his safety when he approached the defendant in the barn.

motion to suppress, that the seizure of drugs that followed was illegal because it went beyond the scope of an administrative search,[8] and that there was no independent basis supporting the search.[9] The motion judge's sole finding on this issue was that "[Hines's] motive was to convince the defendant that he was going to perform an administrative search of the tack room."

---

[8]The defendant asserts, without opposition, that the basis for an administrative search of buildings on the race track would be pursuant to G. L. c. 128A, § 8A, inserted by St. 1974, c. 507, § 2, which provides, in relevant part: "The [racing] commission shall make periodic inspections of all of the installations and facilities operated by its licensees, including stable areas . . ."; and pursuant to 205 Code Mass. Regs. § 4.13(27) (1985), which provides, in part:

> "Every racing Association, the Commission or the Stewards investigating for violations of the law or [regulations] adopted by the Commission shall have the right to permit persons authorized by any of the them to search the person, or enter and search the buildings, stables, rooms, vehicles or other places within the grounds of the association, or at other places where horses which are eligible to race are kept together with the personal property and effects contained therein. Every licensed person or person permitted to pursue his/her occupation or employment within the grounds of any association by accepting his/her license or such permission does thereby irrevocably consent to such search . . . ."

We will assume that these authorizations govern the conduct of an administrative inspection at the race course. See Perez v. State Racing Commn., 23 Mass. App. Ct. 268, 271 nn.4,5 (1986). See also, e.g., Horseman's Benevolent & Protective Assn. v. State Racing Commn., 403 Mass. 692, 704 n.3 (1989) ("racing is a heavily regulated industry").

[9]Had the drugs been discovered during the course of an otherwise valid administrative search, our inquiry would focus on whether the drugs were found during a search that exceeded the scope required to lawfully administer the applicable regulatory scheme. See, e.g., Commonwealth v. Eagleton, 402 Mass. 199, 207 (1988), where the court did not reach the issue, but cited with approval the principle set forth in United States v. Nechy, 827 F.2d 1161, 1167 (7th Cir. 1987), "If a search is objectively reasonable, the motives of the officers conducting it will not turn it into a violation of the Fourth Amendment," and further noted: "Where, however, the search is not undertaken as a regulatory search, principles governing administrative searches have no application. . . . An administrative search may not be used as a subterfuge to avoid the burden of establishing probable cause to support a criminal investigative search." Commonwealth v. Eagleton, supra at 207 n.13. See also, e.g., Commonwealth v. Frodyma, 386 Mass. 434, 438 (1982), S.C., 393 Mass. 438 (1984) ("An administrative inspection warrant, granted under a lesser standard of probable cause than is required in traditional criminal searches and seizures, cannot be used as a device to seize evidence for use in a criminal prosecution").

He made no rulings on the defendant's claim that this was an administrative search that went too far, instead concluding that the defendant's compliance with the request that he accompany Hines to the tack room was voluntary, and that Hines was justified in conducting a limited pat frisk of the defendant to search for weapons.

In assessing whether the motion judge's conclusions were correct, Hines's stated claim, but in fact a pretext, that he was about to conduct an administrative search is significant. Our analysis does not, however, depend on a determination of the permissible scope of an administrative search[10] — Hines testified that he intended the defendant to believe that he was conducting an administrative search, but denied that the contraband was discovered in connection with an administrative search, and the motion judge appears to have credited Hines's testimony in all respects. Thus, the precise question we address is whether State police may use the pretext of an administrative search to detain a suspect in a criminal investigation, where there is no other lawful basis — reasonable suspicion or probable cause — to justify that action.

Lines are easily blurred where police officers conduct administrative searches since "unlike administrative agents, the police have general criminal investigative duties which exceed the legitimate scope and purposes of purely administrative inspections." *Commonwealth* v. *Lipomi*, 385 Mass 370, 378 (1982). In this dual capacity, it is all too easy for a police officer falsely to invoke a regulatory scheme in order to gather

---

[10]To determine the permissible scope of a regulatory inspection would require us to ascertain whether "the statutory program, in terms of certainty and regularity of its application, . . . provide[s] a constitutionally adequate substitute for a warrant. . . . [There must be a] proper limitation on the 'time, place, and scope' of the inspection in order to restrain the discretion of the inspectors." *Commonwealth* v. *Eagleton*, *supra* at 204-205 (citation omitted). There is insufficient evidence in the record from which it would be possible to make "any interpretation of the regulation to bring it within limits suggested by the cases." *Commonwealth* v. *Perez*, 23 Mass. App. Ct. 268, 276 (1986).

We also do not reach the defendant's claim, raised for the first time on appeal, that G. L. c. 128A, § 8A, and 205 Code Mass. Regs. § 4.13(27) (1985) are constitutionally infirm because overbroad. The defendant did not "argue[] his suppression motion on this ground. Because the defendant did not alert the trial judge to this argument, the waiver doctrine precludes him from doing so on appeal." *Commonwealth* v. *Rivera*, 429 Mass. 620, 623 (1999).

evidence of criminal activity. In the circumstances here, we conclude that the defendant's compliance with Hines's request was not free and voluntary consent, but only "acquiescence to a claim of lawful authority" to search under the provisions of G. L. c. 128A, § 8A. *Commonwealth* v. *Krisco Corp.*, 421 Mass. 37, 46 (1995). If using the pretext of an administrative search to conduct a criminal investigation is unlawful then both Hines's detention of the defendant on that basis and the ancillary pat-search likewise were unlawful.

While these precise issues have not previously been decided, we find guidance in decisions that involve discovery of evidence of illegality during the course of a regulatory inspection. In *Commonwealth* v. *Bizarria*, 31 Mass. App. Ct. 370 (1991), we observed that both "*Commonwealth* v. *Eagleton*, 402 Mass. 199, 206 n.13 (1988), and *Commonwealth* v. *Frodyma*, 386 Mass. [434, 438 (1982), *S.C.*, 393 Mass. 438 (1984)], make clear that an administrative search may not be used as a subterfuge to avoid the burden of establishing probable cause to support a criminal investigative search." *Commonwealth* v. *Bizarria, supra* at 375 n.7. See note 10, *supra*. In *Commonwealth* v. *Tremblay*, 48 Mass. App. Ct. 454 (2000), the defendant claimed that an administrative inspection of an auto salvage lot "was . . . a pretext or subterfuge" that had been motivated by suspicion of the presence of stolen cars. We ultimately rejected this claim because there "the .motion judge expressly and correctly rejected the argument of pretext." *Id.* at 459-460. However, crucial to our holding in *Tremblay* was the fact that the State trooper "recognized and respected a dividing line between administrative procedure and pursuit of evidence of . . . crime." *Id.* at 462. Further, we cautioned that our decision "should not be misunderstood as scanting possibilities of abuse on a pretext." *Id.*, citing, among other cases, *People* v. *Scholten*, 175 Ill. App. 3d 214, 218 (1988). The *Scholten* court upheld the suppression of evidence where it was established that the sole purpose of the search was to look for illegal gambling activities and that a regulatory inspection to uncover alcoholic beverage violations was a pretext, stating, "if 'the primary object of the search is to gather evidence of criminal activity' a search warrant based on probable cause must be

obtained." *Ibid.* See *United States* v. *Johnson*, 994 F.2d 740, 742 (10th Cir. 1993) (administrative inspection may not be used as a pretext solely to gather evidence of criminal activity); *Showers* v. *Spangler*, 957 F. Supp. 584, 592 (M.D. Pa. 1997), rev'd in part on other grounds, 182 F.3d 165 (3rd Cir. 1999) (administrative inspection may not be used as pretext to gather evidence as part of what is in fact a criminal investigation).

In view of these prior holdings, we conclude that where it is clearly established, as it was in this case, that a search was initiated on the pretext of administrative authority but had as its sole purpose the investigation of criminal activity, the fruits of that search may not be used in a criminal proceeding unless an independent, constitutionally sound basis exists, at or prior to the sham invocation of such administrative authority, that would justify the seizure. See *People* v. *Pace*, 101 A.D.2d 336, 340, aff'd, 65 N.Y.2d 684 (1985) ("once the purpose behind the search shifts from administrative compliance to a quest for evidence to be used in a criminal prosecution, the government may constitutionally enter the premises only upon securing a warrant supported by full probable cause"). See also *Abel* v. *United States*, 362 U.S. 217, 225-226 (1960).[11] There was no such independent basis here.[12] Therefore, the seized drugs were fruits of the unlawful act and should have been suppressed. *Commonwealth* v. *Borges*, 395 Mass. 788, 795 (1985). "The

---

[11]Because an administrative search, properly invoked and conducted, often requires no apparent violation to trigger it, we reject analogies to automobile stop cases. Compare *Commonwealth* v. *Censullo*, 40 Mass. App. Ct. 65, 66 (1996) (motion to suppress should have been allowed because automobile stop based on good faith, but mistaken, belief that defendant had committed traffic violation). Contrast *Whren* v. *United States*, 517 U.S. 806 (1996) (upholding automobile stop for observed, but trivial, traffic violation, where police suspected drug offense).

[12]We note, as an aside, that there was also no objective basis for Hines's statement that he was afraid, because "specific and articulable facts" were lacking. *Commonwealth* v. *Silva*, 366 Mass. 402, 406 (1974). The motion judge's finding that Hines was "aware that horse trainers often carry, on their person, tools of the trade that include kni[v]es and scissors," does not in the circumstances support the conclusion that Hines was reasonably in fear. Hines testified that he had no fear for his safety until the defendant refused to empty his right pants pocket, became agitated, and requested to speak to his union representative. Hines did not state to the defendant that he was afraid until after Hines had attempted to pat the pocket, and he then did not conduct a "pat-down" of the defendant's outer clothing to ascertain the presence of a

order denying the motion to suppress is reversed. In this case it is clear that if the motion to suppress had been allowed, the evidence that remained would have been insufficient to support a conviction. The defendant's motion for a required finding of not guilty must be allowed." *Commonwealth* v. *Thibeau*, 384 Mass. 762, 765 (1981). *Commonwealth* v. *Straw*, 422 Mass. 756, 762 (1996). The judgment is reversed, the finding is set aside, and judgment for the defendant shall enter.

*So ordered.*

---

weapon. Had he done so, he would not have felt anything that would have alerted him to the possible presence of a weapon.

To the extent there was any actual exigency here, it was created by Hines's own unlawful conduct, actions the Commonwealth cannot be permitted to exploit at trial. See *Commonwealth* v. *Thibeau*, 384 Mass. 762, 764 (1981); *Commonwealth* v. *Stoute*, 422 Mass. 782, 789 (1996); *Commonwealth* v. *Grinkley*, 44 Mass. App. Ct. 62, 71-72 (1997); *Commonwealth* v. *Wright*, 48 Mass. App. Ct. 912, 913 (1999). Compare *Commonwealth* v. *King*, 389 Mass. 233, 245 (1983) (no basis for stop, but independent and intervening act of driver jumping out of car and firing weapon created probable cause to arrest and to conduct search incident to arrest).

Our decision today does not deprive police of the ability to protect themselves from attack whenever they perceive danger — even if that danger arises at a time when police are engaged in unconstitutional actions. We merely conclude that the exclusionary rule forbids the admission of evidence obtained during searches that have no lawful basis.