JOURNAL ENTRY AND OPINION
{¶ 1} This is a consolidated appeal by George Cornell and Yolanda Mitchell, who claim that their convictions on charges of operating a bottle club, permit required, and operating a gambling house are against the manifest weight of the evidence and that errors committed by the trial court deprived them of a fair trial. After a review of the records and the arguments of the parties, we reverse the decision of the trial court for the reasons set forth below.
 {¶ 2} The facts of this case are as follows: After receiving several anonymous tips that illegal gambling, drug sales and prostitution were being conducted at a gentleman's club known as Plush 2000, undercover officers Roland Mitchell and Leland Edwards entered the club to conduct surveillance around midnight on May 10, 2002.
 {¶ 3} Throughout the course of the evening, Officers Mitchell and Edwards were approached by three dancers soliciting prostitution, and they noted the pungent smell of marijuana throughout the club. The officers eventually located an area in the back of the facility where several patrons would enter for extended periods of time and exit carrying what appeared to be alcohol. Officer Mitchell attempted to gain access to this back room, but was denied by a woman named "Pumpkin," later identified as Yolanda Mitchell.
 {¶ 4} The officers kept in telephone contact with Sergeant Morris and Commander McGrath, who were waiting outside the club with a SWAT unit and representatives of the Health Department, who then entered the club with the SWAT team and executed an administrative health warrant.
 {¶ 5} George Cornell and his daughter, Yolanda Mitchell, were then arrested and charged with violations of bottle clubs and operating a gambling house, under Cleveland City Ordinances ("C.C.O.") 617.09 and 611.03.
 {¶ 6} On August 5, 2002, the city filed additional charges against the pair for public gaming, under C.C.O. 611.04, and permit required, under C.C.O. 617.05. The charge of operating a gambling house was dismissed.
 {¶ 7} The parties moved to suppress the evidence based on the lack of a search warrant, which was overruled on October 16, 2002, and, following a jury trial, both Cornell and Mitchell were convicted on all charges. Cornell was sentenced to 180 days suspended incarceration, a $1500 fine, 100 hours of community service and three years of active probation. The defendants moved for a new trial, which was denied in February 2003.
 {¶ 8} The defendants now appeal citing several assignments of error, which are set forth in the appendices to this opinion.
 MOTION TO SUPPRESS {¶ 9} In Cornell's first assignment of error and Mitchell's second assignment of error, they claim error in the denial of their respective motions to suppress evidence based on illegally obtained evidence. The crux of the argument revolves around the contention that police officers used the premise of a Health Department inspection warrant to find spoiled meat as the pretext for searching the club for prostitution and/or drug activity. We agree and find this assignment of error dispositive.
 {¶ 10} In reviewing a motion to suppress, this court adheres to the standard of review as articulated in State v. Curry: "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973), 34 Ohio St.2d 250, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Schiebel (1990),55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906." State v.Curry, (1994), 95 Ohio App.3d 93 at 96, 641 N.E.2d 1172.
 {¶ 11} Cornell contends that the state's argument is factually erroneous because it is based upon a belief that the officers' entry into the club and subsequent search were permissible under the health inspection warrant. Mitchell further argues that the decision to enter the club based on the observations of two officers was insufficient to support the warrantless entry into the club and claims that, since there was no urgent need to enter the premises, the officers' action was unreasonable.
 {¶ 12} The city, however, claims that the doctrine of "open view," as articulated in Texas v. Brown (1983), 460 U.S. 730, justifies the presence of the officers inside the club and that since there can be no expectation of privacy in such open areas, it is not necessary to obtain a warrant for misdemeanor arrests when acts occurred in the presence of the officers.
 {¶ 13} Texas v. Brown, however, held that the "plain view" doctrine permits the warrantless seizure by police of private possessions where three requirements are satisfied. First, the officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area. Id. at 736-737. Second, the officer must discover incriminating evidence "inadvertently," and may not "know in advance the location of [certain] evidence and intend to seize it," relying on the plain-view doctrine only as a pretext. Id. at 737. Finally, it must be "immediately apparent" to the police that what they observe may be evidence of a crime, contraband, or otherwise subject to seizure. Id. at 737. The original second requirement of "inadvertence" has since been discarded, see Horton v. California (1990), 496 U.S. 128; therefore, the plain view analysis contains only the first and third of its original elements. State v. Wangul (Feb. 14, 2002), Cuyahoga App. No. 79393.
 {¶ 14} It is not disputed that both officers entered the premises lawfully, paying the entrance fee and entering the club. At the hearing on the motion to suppress, Officer Mitchell testified that "ten plus" officers entered the club, including a SWAT unit, detectives from the vice unit and a detective from the intelligence unit, all of whom were armed. Officer Edwards testified that he was specifically sent to Plush 2000 to do an investigation that entailed any illegal activity in and around the premises. He stated that he and Detective Mitchell were assigned to do surveillance and to gather information so that it could be sent back to the other officers who were "in the area" to execute a health warrant. He also testified that he had received information about a "hidden room" in the rear of the club and made an attempt to locate this room. Therefore, the officers entered the club with the intention of investigating suspected illegal activity at the club, which purportedly had no relation to the health warrant. Instead, the Health Inspector waited in the vehicle outside the club with the other officers and entered only upon receiving the signal from Officers Edwards and Mitchell.
 {¶ 15} Although the city now claims protection under an administrative health warrant, the initial search was not undertaken as part of any regulatory or administrative search, but rather was undertaken for the specific purpose of gaining entrance into a back room to investigate alleged criminal activity. Had the items been discovered during the course of a valid health inspection search, the focus would remain on the scope of the search, which is not directly at issue in this case. "To extend the scope of a legitimate intrusion to the seizure of evidence that the officers knew in advance they would `find in plain view and intended to seize, would fly in the face of the basic rule that no amount of probable cause can justify a warrantless seizure.'" State v. Osborn
(1980), 63 Ohio Misc. 17, citing Coolidge v. New Hampshire (1971),406 U.S. 443.
 {¶ 16} Further, although even warrantless regulatory inspections of closely regulated businesses are reasonable under the Fourth Amendment when specifically authorized by statute and authorized by neutral criteria, an administrative inspection may not be used as a pretext solely to gather evidence of criminal activity. United States v. Mahaney
(C.A. 10, 1997), No. 96-7062. "An administrative search may not be used as a subterfuge to avoid the burden of establishing probable cause to support a criminal investigative search." Commonwealth v. Eagleton
(1988), 402 Mass. 199, 207.
 {¶ 17} Moreover, an "administrative inspection warrant, granted under a lesser standard of probable cause than is required in traditional criminal searches and seizures, cannot be used as a device to seize evidence for use in a criminal prosecution." Commonwealth v. Frodyma
(1982), 386 Mass. 434, 438.
 {¶ 18} For these reasons, the decision of the trial court mandates reversal. We additionally note that the search warrant and supporting affidavit are absent from the record.
 {¶ 19} We find Cornell's first assignment of error and Mitchell's second assignment of error dispositive and reverse the ruling of the trial court.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellee costs herein.
It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, J., and *George, J., concur.
*Sitting by Assignment: Judge Joyce J. George, Retired, of the Ninth District Court of Appeals.
 APPENDIX A
APPELLANTS SIX ASSIGNMENTS OF ERROR:
I. THE TRIAL COURT IMPROPERLY DENIED APPELLANT'S MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE.
II. EVIDENCE WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTIONS.
III. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
IV. THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION TO DISMISS THE NEW COMPLAINT DUE TO A VIOLATION OF THE APPELLANT'S SPEEDY TRIAL RIGHTS.
V. THE TRIAL COURT ERRED WHEN IT ALLOWED THE CITY TO INTRODUCE IRRELEVANT AND UNDULY PREJUDICIAL EVIDENCE OF CRIMES COMMITTED BY OTHERS THAT WERE UNCONNECTED TO THE CHARGES AGAINST THE APPELLANT.
VI. THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION TO DISMISS CHARGES BASED ON THE FACT THAT CITY ORDINANCE, SECTIONS 617.09,617.05, AND 611.03, ARE VAGUE AND OVER BROAD, THUS VIOLATING THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 APPENDIX B
APPELLANTS EIGHT ASSIGNMENTS OF ERROR:
I. THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION TO DISMISS THE NEW COMPLAINT DUE TO THE VIOLATION OF APPELLANT'S SPEEDY TRIAL RIGHTS.
II. THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE WHEN THE POLICE MADE A WARRANTLESS ENTRY OF THE PREMISES AND THERE WERE NO EXIGENT CIRCUMSTANCES JUSTIFYING THAT ENTRY.
III. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR A NEW TRIAL BASED ON THE FACT THAT THERE WAS AN ACTUAL CONFLICT OF INTEREST OF PRIOR COUNSEL'S JOINT REPRESENTATION OF THE APPELLANT YOLANDA MITCHELL AND GEORGE CORNELL.
IV. THE TRIAL COURT ERRED WHEN IT ALLOWED THE CITY TO INTRODUCE IRRELEVANT AND UNDULY PREJUDICIAL EVIDENCE OF CRIMES COMMITTED BY OTHERS THAT WERE UNCONNECTED TO THE CHARGES AGAINST THE APPELLANT.
V. THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL WHEN THERE WAS INSUFFICIENT EVIDENCE OF A MATTER OF LAW THAT THE APPELLANT VIOLATED SECTION 617.09 OF THE CLEVELAND MUNICIPAL CODE.
VI. THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION TO DISMISS CHARGES ON THE FACT THAT THE CITY ORDINANCES SECTION 617.089, SECTION 617.05, AND SECTION 611.04 ARE VAGUE AND OVER BROAD, THUS VIOLATING THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
VII. THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL WHEN THERE WAS INSUFFICIENT EVIDENCE AS A MATTER OF LAW THAT THE APPELLANT VIOLATED SECTION 617.05 OF THE CLEVELAND MUNICIPAL CODE.
VIII. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL WHEN THERE WAS INSUFFICIENT EVIDENCE AS A MATTER OF LAW THAT THE APPELLANT VIOLATED SECTION 611.04 OF THE CLEVELAND MUNICIPAL CODE.