Agnes, Peter W., J.
1. Introduction
The defendant Daniel Hayes is charged in an eleven-count indictment with possession of a firearm with a defaced serial number, unlawful possession of ammunition (2 counts), unlawful possession of a firearm (2 counts), possession of a large capacity feeding device, possession of marijuana with intent to distribute (2 counts), trafficking in cocaine (2 counts), and cultivating marijuana. The defendant has filed a motion to suppress evidence seized from his home at 23 Bolton Street, Worcester by members of a law enforcement task force on June 2, 2008. Based on the credible evidence presented at the hearing on the motion to suppress, I make the following findings of fact and rulings of law.
2. Findings of Fact
On June 2, 2008, Worcester Police officer Robert Belsito and Detective Samuel Rivera participated in the execution of an arrest warrant for the defendant Daniel Hayes. These officers and other members of law enforcement including federal agents, parole officers, state police and local police, were involved in what was termed “Operation Falcon” which was an annual effort to serve arrest warrants that had issued for persons on default in pending criminal cases. Detective Rivera had received information from a confidential Informant (Cl) that one of the persons on the list of potential targets, the defendant, Daniel Hayes, was actually living at 23 Bolton Street in Worcester even though the outstanding warrant for the defendant (charging him with possession of cocaine and possession with intent to distribute marijuana) listed him living at a Vinson Street address. See exhibits 1 and 2. The Cl was a first-time informant who had not previously provided the police with any credible information.
3.
Based on the information received from the Cl, officer Belsito and detective Rivera proceeded to 23 Bolton Street. Four or five other officers were also involved in this operation. Contrary to the testimony of the police, I find that it was not the intent of Detective Rivera to simply arrest the defendant on the outstanding warrant. Rather, it was his intent to use that warrant to get inside the defendant’s home in order to conduct a warrantless search. The warrant-less search was conducted by officer Belsito, Detective Rivera and the other four or five police officers who were present. The police knocked on the front door and the defendant opened it and appeared in the doorway. The defendant identified himself and was placed in handcuffs by the police. The police brought the defendant inside the home and sat him down on a couch in his living room. No Miranda warnings were administered. Detective Rivera, who had received information from the Cl indicating that the defendant had guns in his house, along with the other officers conducted a warrantless search of the defendant’s home including the basement area and discovered a firearm inside a baby’s crib, some marijuana plants, and a quantity of marijuana and cocaine. I expressly do not credit the testimony of officer Belsito and Detective Rivera that the defendant gave his consent to a search, and find that there was no consent in this case. I also do not credit the testimony of the police that the defendant waived his Miranda rights. I find that there were no incriminating statements made by the defendant, or, alternatively, that if any were made they were the product of an unlawful interrogation of a person in police custody who had not waived his Miranda rights. I find that after the defendant was handcuffed and placed on a couch inside his living room, the police fanned out and conducted a warrantless search of the defendant’s home. I also generally credit the defendant’s account of the events surrounding his arrest and the warrantless search of his home. Subsequent to the warrantless search, the police obtained a search warrant and returned to 23 Bolton Street where they found a second firearm.
4. Discussion
The evidence seized by the police on June 2, 2008, including the evidence seized pursuant to a warrant, was obtained as a result of a warrantless search undertaken without probable cause or consent. It is well established that a suspicion, even a strong suspicion that a person is in possession of contraband does not constitute probable cause. Commonwealth v. Upton, 394 Mass. 363, 370 (1985). When the police rely on information supplied by a confidential informant, there are clear guidelines which must be followed before the police may undertake to conduct a search based on the information supplied by such an *488 informant. Id. at 374-77. Here, the police disregarded those rules. The police conducted a warrantless search without exigent circumstances and on the basis of information supplied by an unreliable informant. All of the evidence seized by the police from 23 Bolton Street must be suppressed. “Evidence obtained as the proximate result of unjustified, warrantless police entry into private quarters, in substantial (and not merely technical) violation of the Fourth Amendment, is subject to the exclusionary rule. The direct evidentiary fruits of such an entry are subject to suppression as inadmissible evidence . . .” Commonwealth v. Degeronimo, 38 Mass.App.Ct. 714, 729 (1995). See also Wong Sun v. United States, 371 U.S. 471, 487-88 (1963); Commonwealth v. Guaba, 417 Mass. 746, 755-56 (1994); Commonwealth v. Bradshaw, 385 Mass. 244, 258 (1982); Commonwealth v. Rosenthal, 52 Mass.App.Ct. 707, 714-15 (2001).
5.
What makes the case unusual is that following the initial warrantless search of the defendant’s home, Detective Rivera had occasion to meet with the Cl. While inside the detective’s car, the Cl placed a cell phone call to his girlfriend. When her answering machine picked up, the Cl closed the phone thinking he had broken the connection. Unknown to the Cl and Detective Rivera, the cell phone connection remained live and the ensuing conversation between Detective River and the Cl was recorded on the girlfriend’s answering machine. A transcript of that inadvertently recorded conversation is in evidence and marked exhibit 3. Based on the testimony taken at a hearing on the matter, I find that the transcript is an accurate record of the conversation between Detective River and the CL This transcript indicates that at least Detective Rivera used the ongoing Operation Falcon sweep of persons in default as a pretext to get inside the defendant’s home to conduct a warrantless search for weapons. In view of the fact that neither the police nor the Cl had any role in recording this conversation and that the conversation was not recorded intentionally, see Commonwealth v. Damiano, 444 Mass. 444, 446-49 (2005), it should not be suppressed despite the general prohibition in the Massachusetts Wiretap law, G.L.c. 272, §99(p), against secretly recording conversations. See Commonwealth v. Ennis, 439 Mass. 64, 70 (2003); Commonwealth v. Gonzalez, 68 Mass.App.Ct. 620, 629 (2007), and cases cited.
6.
The police perform a vital service to the communily and safeguard the well being of its citizens when they seize illegal drugs and firearms. However, when the police carry out these activities by disregarding the law, as they did in this case, the police do a grave disservice to the community and diminish the security of its citizens. The question is not whether the defendant was in violation of the law, but rather whether the police respected the law in their efforts to gather evidence against the defendant. When judges are called upon to enforce the mandates of the state and federal constitutions against the police, the cases are almost always ones like this in which a person is charged with a crime on the basis of incriminating evidence which has been seized by the police. It’s thus easy to fall into the trap of thinking that when judges allow motions to suppress evidence the only people who benefit are criminals. However, there are thousands of searches and seizures conducted by the police every year in which no evidence of criminal conduct is discovered and no one is charged with a crime. In such cases, it is rare that a police report is prepared and filed.[1] If constitutional rights are not vigorously enforced in cases in which someone is charged with a crime and brought before the courts, what incentive will there be for the police to play by the rules in their day-to-day encounters with others?[2]
7.
The exclusionary rule is a central tenet of our criminal justice system. Correia v. Fagan, 452 Mass. 120, 128 n.13 (2008). “Its purpose is to deter — to compel respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard it.” Commonwealth v. Lora, 451 Mass. 425, 438 (2008), quoting United States v. Calandra, 414 U.S. 338, 347 (1974) (quotation omitted). Without an exclusionary rule, Article 14 of the Declaration of Rights would become a mere rhetorical device. See Commonwealth v. Goewey, 69 Mass.App.Ct. 429, 436 (2007).
8.
The exclusionary rule also is supported by the “imperative of judicial integrity.” Mapp v. Ohio, 367 U.S. 643, 659 (1961), quoting Elkins v. United States, 364 U.S. 206, 222 (1960), quoted in Commonwealth v. Lora, 451 Mass. at 438 n.25. The courts should not assist the government in the wilful violation of constitutional rights. See Selectmen of Framingham v. Municipal Court of the City of Boston, 373 Mass. 783, 786-87 (1977). “The exclusion of evidence has been applauded as just because it puts both the State and the accused in the positions they would have been in had the Constitution not been violated — neither better nor worse.” Commonwealth v. Lora, 451 Mass. at 438 n.25, quoting Norton, The Exclusionary Rule Reconsidered: Restoring the Status Quo Ante, 33 Wake Forest L.Rev. 261, 262 (1998). This is not a case involving a mere technical oversight or even a situation in which the police are alleged to have acted in good faith. Compare Commonwealth v. Valerio, 449 Mass. 562 (2007), and Commonwealth v. Coburn, 62 Mass.App.Ct. 314 (2004). Likewise, the inevitable discovery doctrine has no application in this case. See Commonwealth v. Dejesus, 439 Mass. 616 (2003). “This was a fundamental violation of the defendant’s constitutional rights, and an altogether appropriate *489 occasion for imposition of the exclusionaiy rule.” Commonwealth v. Cruz, 53 Mass.App.Ct. 24, 36 (2001).
ORDER
For the above reasons, the defendant’s motion is ALLOWED. All physical evidence seized from 23 Bolton Street, Worcester, and any statements made by the defendant on June 2, 2008 are suppressed.

In Commonwealth v. Coleman, 64 Mass.App.Ct. 558, 562 (2005), the Appeals Court made this observation: “The statutory requirement that motorists stop for police brooks no exception — even for a driver who reasonably believes that police detention is unjustified. If there is no legitimate basis for the stop, the driver’s recourse is not through flight with its attendant risks to others, but through the orderly judicial process.” The Appeals Court is certainly correct that as drivers we must obey the police even when we think they are acting without legal justification. However, it is chimerical to suppose that in cases in which the police act without legal justification, but no arrest or citation is issued, a motorist has any meaningful recourse through the judicial process.

In my experience as a trial judge in the District and Superior Court Departments for more than eighteen years and on the basis of having heard thousands of motions to suppress and criminal trials, the vast, vast majority of police officers perform their duties with great skill, and in compliance with the law even when they find themselves in harm’s way and under highly stressful conditions. However, the extraordinary authority granted to the police and the urgent need for their services makes even one instance where police officers disregard the law a matter of grave concern.